(C. D. 589)

R. W. GRESHAM *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 30, 1942)

E. D. Howald for the plaintiff.

Paul P. Rao, Assistant Attorney General (Dorothy C. Bennett, special attorney), for the defendant.

Before OLIVER, WALKER, and TILSON, Judges

TILSON, Judge: This suit against the United States was brought to recover a certain sum of money alleged to have been illegally exacted as customs duties on imported merchandise which is invoiced as "titrol." Duty was levied thereon at the rate of 25 per centum ad valorem under paragraph 5 of the act of 1930, as a medicinal preparation, not specially provided for. The plaintiff claims the same to be properly dutiable at only 12½ per centum ad valorem under paragraph 58 of said act and the French Trade Agreement, T. D. 48316, which provides for—

Oils, distilled or essential: Clove, patchouli, sandalwood, and all other essential and distilled oils not specially provided for, not containing alcohol.

At the trial of the case one witness, testifying for the plaintiff, stated that he was a chemist serving as secretary and treasurer of the Colman Sewall Corporation, the actual importer herein, and that his duties included research work; that this company had imported the involved merchandise; that after receiving the merchandise it was sent to the Pathological Division for pathological tests at St. Alexis Hospital; that under his supervision a chemical breakdown was made to ascertain qualitatively what the oil was, and it was found to be an essential oil containing no alcohol; that from the imported merchandise the plaintiff manufactures certain products which are pharmaceutical preparations and that the imported merchandise is sold to other manufacturers in this country who are using it under their own formulas; that it was impossible to determine that titrol was anything other than essential oil, and that commercially it was merely an essential oil.

On cross-examination the witness testified that the plaintiff manufactures a water solution of the imported oil and manufactures three different types of ointments and incorporates therein the imported essential oil; that these ointments could be used for eczema, skin irritations, and extensively they were being used in the treatment of varicosed ulcers, and that the plaintiff does not manufacture any other products.

The witness further testified that the imported merchandise comes from a tree described in the botanical indexes as a "melaculeua alternofia" which is a specie of the eucalyptus family, a peculiar species found in the swampy regions of Australia; that the imported merchandise is an essential oil; that an essential oil varies from an extract in that it maintains certain properties that the original plant has in it, and an extract would probably be just a portion of it, could be a portion of the essential oil or a portion of the product; that it was obtained by steam distillation; that it could be used as an inhalent for common colds because of the high rate of volatility, but that he did not know of it ever having been so used, that the plaintiff did not import nor use it for that purpose.

There was offered and admitted in evidence as exhibit 1, a report made by the Government chemist, which reads as follows:

The sample submitted, a pale straw-colored oil, is a non-alcoholic mixture of essential or distilled oils. Its classification depends on its use. Its name indicates it is used as an antiseptic, and if it is to be used chiefly as a medicinal preparation it is provided for in paragraph 5. Otherwise, following Abstracts 13982 and 20525, it would be classified under paragraph 1558 of the Tariff Act at 20%, if not used as a perfume material.

There was no further testimony and the case was submitted by both sides upon the foregoing record.

This record shows that the imported merchandise is an essential oil of the eucalyptus obtained by distillation and that after importation this substance is used by the importer as one of the ingredients in a number of ointments which in turn are used in the treatment of varicose ulcers and may be used for the treatment of eczema and other skin irritations. It is also sold as imported to some of plaintiff's customers to be used by them in their own formulas.

This is a long way from establishing that the imported merchandise is a medicinal preparation. In the record before us the only testimony as to the use of this merchandise is that of the only witness to the effect that the only use made of this substance was to incorporate it with other substances in the preparation of different types of ointment, without one word of evidence as to whether it was so incorporated because of any medicinal value it possessed. While the chemist states that its name indicates it is used as an antiseptic, there is nothing in the record to indicate any such use.

On the record before us we are of the opinion that the plaintiff has overcome any presumption there may have been as to the correctness of the collector's classification of the imported merchandise as a medicinal preparation, and we so hold. We, therefore, cannot accept the statement of counsel for the defendant, in her brief filed herein, that—

Thus, the undisputed evidence establishes that this article is a non-alcoholic mixture of essential or distilled oils which is used for medicinal purposes.

There is no evidence that the merchandise is used at all in the condition in which imported or when used with other substances in making certain ointments that it has any medicinal properties. In other words, the record fails to establish that there is any medicinal purpose, value, or use in incorporating the imported merchandise into the ointments made by the importer.

Counsel for the defendant appears to rely strongly upon the case of *McKesson* v. *United States*, 3 Ct. Cust. Appls., 515. In that case the merchandise consisted of menthol, produced by freezing the oil collected from a distillate of the peppermint plant, which, after importation, was mixed with an inert carrier, and used as a medicine. The appellate court there held that the fact that it was so mixed with a carrier before it could be used for medicinal purposes did not remove it from the category of a medicinal preparation. But it does not follow, as erroneously stated by counsel for the defendant, in her brief filed herein, that:

So, also, in the case at bar, the fact that this imported article is incorporated into an ointment before being used for medicinal purposes, does not remove it from the classification as a medicinal preparation.

An examination of the two cases will show that the *McKesson* case is the exact reverse of the present case. In the *McKesson* case the menthol, the imported article, contained the medicinal properties and that the article which contained the medicinal properties was mixed with an inert carrier before use, which inert carrier apparently possessed no medicinal properties, while in the instant case the imported merchandise, essential oil, appears to be the inert carrier possessing no medicinal properties, which is mixed with other substances possessing medicinal properties.

In the *McKesson* case there had been something more than the mere distillation of the peppermint plant in order to obtain the merchandise imported in that case. There had been a further processing of the distillate by freezing, which produced crystals, and the crystals were the articles imported. The imported article, menthol, though not used in the form in which imported and before being used was mixed with other materials which constituted the carrier, it was the

menthol, the imported article, which had the medicinal value and was the ingredient which was used for medicinal purposes, not the carrier.

In the case at bar the only preparation which the imported merchandise had undergone was the distillation of the oil from the eucalyptus plant, and the record before us reveals not the slightest sign of a medicinal value or purpose in the imported merchandise *per se*, except the statement of the chemist to the effect that its name indicates that it is used as an antiseptic. The record as a whole does not support this apparent assumption on the part of the chemist. Moreover, the ointment into which the imported oil was incorporated, and which thus becomes the carrier, is not shown to be inert, which is the gist of what is said about carriers in *United States* v. *Hillier's*, 14 Ct. Cust. Appls., 216, which case the defendant contends is controlling here.

In the *Hillier's* case it was the imported scammony resin, not the inert carrier, which was used for medicinal purposes. In the case at bar, so far as the record shows, it was the ointment which had the medicinal value and was used for medicinal purposes, and as there is nothing in the record to show that the incorporation of the imported merchandise was for any medicinal purpose, the cited cases are not applicable to this case.

As it has been shown by the record that there is no medicinal preparation before us, and as essential oils are specially provided for under paragraph 58, and as there is no dispute that the imported merchandise is either an essential oil or a mixture of essential oils, paragraph 1558 has no application here. The real issue here is, has the plaintiff made good his claim for duty at 12½ per centum ad valorem under paragraph 58 as amended by the French Trade Agreement, T. D. 48316?

Paragraph 58 reads as follows:

PAR. 58. Oils, distilled or essential: Lemon, grapefruit, and orange, 25 per centum ad valorem; eucalyptus, 15 per centum ad valorem; clove, peppermint, patchouli, sandalwood, and all other essential and distilled oils not specially provided for, 25 per centum ad valorem: *Provided*, That no article mixed or compounded with or containing alcohol shall be classified for duty under this paragraph.

Paragraph 58, as amended by the trade agreement with France, reads as follows:

Oils, distilled or essential: Clove, patchouli, sandalwood, and all other essential and distilled oils not specially provided for, not containing alcohol, 12½ per centum ad valorem.

The claim in the protest reads as follows:

We claim this merchandise to be properly dutiable at the rate of 12½ per centum ad valorem under paragraph 58 and by virtue of the Trade Agreement between the United States and France, effective on June 15, 1936, .* * *.

From the foregoing it is clear that paragraph 58 makes provision for three separate groups of oils, to wit: (1) Lemon, grapefruit, and orange; (2) eucalyptus; (3) clove, peppermint, patchouli, sandalwood, and all other essential and distilled oils not specially provided for. It is also clear that the plaintiff makes claim under the third group only, which group does not include eucalyptus oil. The effect of the "not specially provided for" clause in the said trade agreement is to exclude all essential oils for which special provision has been made. Paragraph 58 contains a special *eo nomine* provision for eucalyptus oils.

The record definitely establishes that the imported merchandise is essential oils of the eucalyptus family. It is true that counsel for the Government, in her brief filed herein, states that the testimony that "titrol" is the essential oil of the eucalyptus is not borne out, but this is perhaps because the authority she consulted did not include under the article on "Eucalyptus" the botanical name mentioned by the witness for the plaintiff. However, no mention is made in said brief of the authorities referred to by the witness when on the stand testifying.

In the case of *United States* v. *Merck*, 66 Fed. 251, the merchandise consisted of "Elaterium," which—

\* \* \* is the residue deposited by the juice of the fruit of echallium elaterium, which is a little fruit resembling somewhat the cucumber, with a hollow interior filled with juice. The fruit is gathered just before it is ripe, because when ripe it breaks in handling. It is cut in two, when the juice flows out, which is allowed to stand until the sediment is deposited at the bottom. The juice is poured off, and the sediment is dried as quickly as possible, to avoid fermentation.

In holding such merchandise not to be a medicinal preparation the Circuit Court of Appeals, Second Circuit, *supra*, said:

It is imported in little cakes, and varies much in quality. It is not used in this form by the physician. The manufacturer extracts from the cakes their vital principal, which is known as "elaterine." *The imported article is not a medicinal preparation. It is an article from which a medicinal preparation can be made.* \* \* \*. [Italics ours.]

Likewise in this case, the merchandise is not a medicinal preparation. It is an article from which a medicinal preparation can be, and perhaps is, made. Numerous articles are used, and perhaps chiefly used in making medicinal preparations, but this does not serve to make such articles *per se* medicinal preparations.

Following the above authority, we hold that the merchandise herein is not a medicinal preparation, and the collector erred in so classifying it.

The merchandise is essential oil of the eucalyptus family, and as such is specifically and *eo nomine* provided for in said paragraph 58 and dutiable at only 15 per centum ad valorem. However, since this

claim is not made in the protest, all claims therein must be, and are hereby, overruled, without affirming the action of the collector. Judgment will be rendered accordingly.