(C. D. 997)

AMERICAN SMELTING & REFINING Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 10, 1946)

*James L. Gerry* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: In these cases the plaintiff seeks to recover duties claimed to have been improperly assessed and collected on importations of what are known as limestone spalls. The collector classified the merchandise under the provision in paragraph 203 of the Tariff Act of 1930, as modified by the trade agreement with Canada published in T. D. 49752, for—

Limestone (not suitable for use as monumental or building stone), crude, or crushed but not pulverized.

with corresponding assessment of duty at the rate of 2½ cents per 100 pounds. The protests make several claims. The claim principally relied upon appears to be for duty at the rate of 15 per centum ad valorem under the provision in paragraph 214 of the same act, as modified by the same trade agreement, providing for—

Stone, not specially provided for (except marble chip or granito and Cornwall stone), ground, or crushed otherwise than merely for the purpose of facilitating shipment to the United States.

It appears also that the foregoing claim is made both directly and by similitude under the provisions of paragraph 1559 of the Tariff Act of 1930.

Plaintiff also claims, alternatively, that if the merchandise is not dutiable under the modification of paragraph 214, quoted above, then it is dutiable under the provisions of paragraph 214 without modification, reading so far as pertinent, as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured * * * not specially provided for * * * 30 per centum ad valorem * * *

Finally, alternative claims are made under the provisions in paragraph 1558 for nonenumerated unmanufactured articles at 10 and 20 per centum, respectively.

The cases have been submitted for decision upon the following stipulation of counsel:

(1) That the merchandise covered by the protests consists of an earthy mineral substance, to wit, limestone.

(2) That the merchandise consists of limestone spalls which are used as a flux in the smelting of copper ores.

(3) That the limestone is blasted down from the face of the quarry primarily to secure rock for use in sulphite process paper mills; and limekilns for the production of burnt lime.

The limestone as thus blasted from the face of the quarry is moved through trommels which separate all pieces larger than 8 x 12. This is known as "paperrock" and is used in the production of wood pulp. The only limit to the maximum size is the ability to handle. Otherwise it is passed through breakers to reduce it to proper size.

The material too fine for paper rock is again screened and all sizes over four (4) inches are used in kilns for the production of burnt lime.

The sizes smaller than four (4) inches are known in trade as "spalls."

(4) That the merchandise has been advanced in condition by blasting, breaking and screening to such a degree as to render it fit for use in its condition as imported.

(5) That it is not crushed, but has been subjected to blasting, breaking and screening only.

(6) That it is not pulverized.

(7) That the advancement in condition produced or secured by subjecting the raw or crude limestone to the several manufacturing processes of blasting, breaking and screening, results in the production of "limestone spalls" an article of merchandise which is fitted and appropriated to a specific use in its condition as imported, to wit, as a flux in the smelting of copper ores.

A "spall," according to Webster's New International Dictionary (1939), is "a chip or fragment," and according to Funk & Wagnalls New Standard Dictionary, it is "a chip, splinter, or flake." From these definitions and the context of the stipulation it would appear that the spalls here involved are the chips, etc., obtained in the process of blasting and breaking limestone to get the larger-sized pieces. In view of the fact that the stipulation specifically states that the limestone in issue is not crushed, our first inquiry is to determine whether it is crude within the meaning of the provision under which duty was assessed.

It seems undeniable that the original blasting which produced the large pieces of limestone (and, doubtless, some of the spalls in issue) cannot be said to have advanced the product thereof from the crude state in a tariff sense, for without the blasting to separate the stone from the quarry there would have been no commercial product. If, then, the limestone at bar is not crude, it must be because of the breaking and screening to which the result of the blasting was subjected.

A reading of paragraphs (4) and (7) of the stipulation leads to the conclusion that the processes of breaking and screening to which the limestone was subjected after being separated from the quarry, conferred upon it a use—as a flux in the smelting of copper ores—which it did not formerly possess. If this conclusion is justified—and we think it is based upon the language of the stipulation—it makes no difference whether the result came about because of a primary intent to cause it, or because it is the byproduct in a process primarily intended for the production of something else.

The term "crude," as used in tariff statutes, has been the subject of consideration many times by this court and our appellate court. In the case of *Fynaut & Popek* v. *United States*, 23 C. C. P. A. 265, T. D. 48112, the latter court reviewed a number of decisions on the meaning of the term and, among other things, said:

This court, however, has held that the term "crude," as used in tariff legislation, is a relative term, its meaning depending upon its use in the context. *United States* v. *Richard & Co.*, 8 Ct. Cust. Appls. 304, T. D. 37583; *United States* v. *Chili Products Corp.*, 23 C. C. P. A. (Customs) 209, T. D. 48052.

In accordance with the foregoing, we have repeatedly held that an article may be crude in a tariff sense, although it has undergone some processes advancing the article from its natural state, provided that such processes do not fit the article for its ultimate use. In the case of *Togasaki & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 463, T. D. 40667, this court said:

The word "crude," has been defined so many times by the courts as to require but little citation of authority here. It has been held to mean, when applied to the name of anything, that this thing, however much it may be processed, if, as a matter of fact, it must go through some additional process of substantial preparation or manufacture in order to fit it for its chief or only use, is, so far as that use is concerned, a crude article. United States *v.* Danker & Marston (2 Ct. Cust. Appls. 522 [524]; T. D. 32251); United States *v.* American Chicle Co.

(10 Ct. Cust. Appls. 98; T. D. 38360); United States *v.* Rice Co. (9 Ct. Cust. Appls. 165; T. D. 37998). * * *

It is noted that the provision under which duty was assessed makes a distinction in classification, although not in rate, between limestone, crude, and limestone, crushed but not pulverized. Evidently Congress considered the process of crushing one which would take limestone out of the category of "crude." We likewise note that under the terms of the stipulation the limestone at bar needed no further processing to fit it for its ultimate use.

The situation in the case at bar differs from that which obtained in the case of *Lackawanna Steel Co. et al.* v. *United States,* 10 Ct. Cust. Appls. 93, T. D. 38359, and in the case of *Gulf Gypsum Co.* v. *United States,* 20 C. C. P. A. 101, T. D. 45725, cited by both counsel for the plaintiff and for the defendant in the briefs filed herein. In both of those cases it clearly appeared that the processes of crushing or breaking which had been applied to the stone prior to importation had fitted it for no new use and were performed solely to facilitate and economize in transportation.

The foregoing considerations compel us to the conclusion that the limestone spalls at bar were not, in their imported condition, crude within the meaning of that term as used in paragraph 203, and it follows that the classification of the collector was erroneous.

As has been said, plaintiff mainly relies upon the claim for duty at the rate of 15 per centum ad valorem under the provision in paragraph 214 of the Tariff Act of 1930, as modified by the Canadian Trade Agreement, for—

Stone, not specially provided for (except marble chip or granito and Cornwall stone), ground, or crushed otherwise than merely for the purpose of facilitating shipment to the United States.

The facts stipulated herein appear to exclude the merchandise from classification directly under the foregoing provision. It does not appear that the spalls in issue were ground, and it is specifically stated that they were not crushed. We note that claim under the same provision is made by similitude, but it is well settled that before resort to that doctrine may be had—

* * * all other paragraphs, except the one providing for nonenumerated unmanufactured or manufactured articles, must be inapplicable * * * (*United States* v. *Stouffer Co.,* 3 Ct. Cust. Appls. 67, T. D. 32351.)

The only paragraph other than the nonenumerated-articles paragraph (1558) under which claim is made by the plaintiff is that portion of paragraph 214 of the Tariff Act of 1930 which was not modified by the Canadian Trade Agreement, *supra.* This provision, we think, covers the merchandise in issue. It reads as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly

or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

It will be noted that the first clause of the paragraph contemplates earthy or mineral substances manufactured, but still retaining their identity and character as mineral substances. The terms "articles" and "wares" as used in the second clause relate to commodities which have a definite shape and form. *Rosenheim* v. *United States*, 5 Ct. Cust. Appls. 100, T. D. 34135. The term "materials (crude or advanced in condition)" in the same clause was evidently added to include commodities in mass form. *F. Weber Co. (Inc.)* v. *United States*, 50 Treas. Dec. 585, T. D. 41926. Seemingly, the articles, wares, and materials covered by the second clause would be those which had acquired an identity and character different from those of the earthy or mineral substances from which they came.

Under this distinction the merchandise at bar would take classification under the first clause, for the manufacturing effort expended upon it, while sufficient to take it out of the category of crude limestone, did not divest it of its identity and character as limestone.

Judgment will therefore issue sustaining the claim in each of the protests for duty at the rate of 30 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, and directing reliquidation of the entries accordingly.