(C. D. 1647)

UNGERER & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 28, 1954)

*John D. Rode* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon, Joseph E. Weil*, and *Samuel D. Spector*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest has been limited to that described on the invoice as "hyperessence oak moss incolore" and assessed with duty at the rate of 30 cents per pound plus 20 per centum ad valorem under the provision in paragraph 60 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for—

All mixtures or combinations containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances.

It is the contention of the plaintiff that the substance involved is not a mixture or combination and, consequently, is not dutiable under the foregoing provision, and that it is, in fact, a floral essence entitled to free entry under the *eo nomine* provision therefor in paragraph 1673 of the same act, which reads as follows:

Enfleurage greases, floral essences and floral concretes: *Provided,* That no article mixed or compounded with or containing alcohol shall be exempted from duty under this paragraph.

Alternatively, it is contended that the merchandise is properly dutiable at the rate of 7½ per centum ad valorem under the provision in paragraph 58 of the same act, as modified by the said General Agreement on Tariffs and Trade, for essential and distilled oils, not specially provided for.

There is no dispute as to the origin of the merchandise at bar and the treatment which brought it to its imported condition. Briefly, a

moss or lichen known as oak moss is found growing on oak trees in certain regions of Europe and Africa. This is gathered, placed in an apparatus known as an extractor, and treated with a volatile solvent (in this case, benzine), which extracts the odor from the plant material. The solvent is evaporated, leaving a waxy residue, which is known as the concrete essence of oak moss and contains both the essence of oak moss and certain inodorous plant waxes. The concrete is treated with alcohol which dissolves the odoriferous matter and leaves the insoluble waxes. The alcohol is evaporated, and the residue is known as absolute essence of oak moss, or oak moss absolute.

The plaintiff offered evidence that the merchandise before us was produced by the foregoing process. It would, therefore, appear that the imported merchandise is merely an extract obtained from oak moss and contains nothing that was not in the original crude material from which it was made. In the case of *Ungerer & Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 279, T. D. 42469, it was held that the words "mixtures" and "combinations," as used in paragraph 61 of the Tariff Act of 1922, the predecessor of paragraph 60 of the present act and identical so far as the language here involved is concerned, import *artificial* mixing or combining of different ingredients.

Defendant sought to offer evidence with the purpose of establishing that there was present in the imported merchandise a substance not normally present in oak moss absolute, but the effort was not carried to a conclusion. On the record before us, and on the authority of the *Ungerer & Co. (Inc.)* case, *supra,* we are satisfied that the plaintiff has established that the merchandise is not dutiable directly under the provisions of paragraph 60.

Defendant, nevertheless, contends that under other principles expressed in the same *Ungerer & Co. (Inc.)* decision the merchandise at bar is dutiable under paragraph 60, by virtue of the similitude clause in paragraph 1559 of the tariff act, which, at the time of importation of the merchandise herein, read as follows:

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned * * *.

It is clear from an examination of the language of the similitude clause that every enumeration in the tariff act, both dutiable and free, must be found to be inapplicable to the merchandise under consideration before recourse may be had to the similitude clause, that is to say, the similitude clause applies only to merchandise which is not enumerated in the tariff act. *B. Fu C. Mazza* v. *United States,* 28 Cust. Ct. 438, Abstract 56515. Consequently, if either the provision in paragraph 1673 for floral essences, or the provision in paragraph 58

for essential or distilled oils, is applicable to the merchandise—both of these provisions being enumerations within the meaning of the term as used in the similitude clause—the latter clause may not be invoked.

As to the claim under paragraph 1673, it is defendant's position that the provision for floral essences is limited to such essences as are derived from flowers, i. e., blossoms, or from such parts of flower plants, e. g., leaves, as may contain the same odor as the flower. It is urged that oak moss is not a flower and that the odor of oak moss is not a floral odor.

In support of this position, the case of *E. H. Burr* v. *United States,* 9 Treas. Dec. 484, T. D. 26181, is cited. That case involved merchandise called "concrete iris de Florence extra," which had been derived from orris root in whole or in part by distillation. The merchandise was assessed with duty as an essential oil and was claimed to be entitled to free entry under the provision in paragraph 626 of the Tariff Act of 1897 for "enfleurage grease." In a prior case, *United States* v. *Dodge & Olcott,* 94 Fed. Rep. 481, it had been held that the term "enfleurage grease" embraced the product of processes other than the enfleurage process to extract the odor of flowers, including the process of extraction by the use of volatile solvents, which was the process used in connection with the merchandise at bar.

The decision of this court in the *Burr* case to the effect that the "concrete iris de Florence extra" was not classifiable under the provision for enfleurage grease was based, at least in part, upon the fact that the imported product was not the odor of a *flower* but was the odor of a *root.* The court there said:

The merchandise here involved is concededly not the concentrated essence of a flower, no matter what may have been the process by which it was produced. It is the extracted odor of the *root* of the orris plant, and to this extent at least there is no disagreement. It was the evident purpose of importer's counsel to show that concrete essences had been produced "from other odor-bearing vegetable bodies than flowers," and in this we think he was successful, but it does not follow from that fact alone that essences so produced are enfleurage grease. The most that may be said in that respect is that odors other than the odors of flowers are extracted by the same means used in the extraction of flower odors.

So, it is argued, in the case at bar. While there is no question but that the oak moss absolute in issue was obtained from oak moss by the same process as is used in obtaining essences, both concrete and absolute, from flowers, nevertheless, oak moss is not a flower, and its odor is not that of flowers, but of undergrowth, or mushrooms.

If the tariff term here in question were "enfleurage greases," we should be inclined to regard the *Burr* case as a controlling authority. However, the tariff term here in question is "floral essences," and it is contended on the part of the plaintiff that that term commonly and commercially includes absolute essence of oak moss.

The common and commercial meanings of terms used in tariff statutes are presumed to be the same, and neither party here has questioned or attempted to rebut that presumption. Plaintiff has cited various dictionary definitions of the term "floral" with the purpose of demonstrating that the common meaning has a broader scope than mere relation to flowers, and that it includes plants or plant life in general.

An examination of the definitions of the term "floral" in Webster's New International Dictionary, 2d edition, 1945, and Funk & Wagnalls New Standard Dictionary, 1942, indicates that the word pertains to flowers. We observe in the Webster definition reference to "Flora," but that word is capitalized and refers to the Roman goddess of flowers and blooming vegetation and not to the noun referring to plant life in general.

It must be remembered that the word "floral" is only part of the tariff term here in question, which is "floral essences." The Webster dictionary referred to defines "floral essence" as "floressence," and this latter term is defined as "A pure essence of the odoriferous principles of flowers."

Reference to technical works on the subject indicates that the production of essences by volatile solvents is associated with the production of "natural flower oils" (Guenther, The Essential Oils, 1948, D. Van Nostrand Co., Inc., New York, vol. 1, p. 188, ff.; Kirk-Othmer, Encyclopedia of Chemical Technology, 1952, The Interscience Encyclopedia, Inc., New York, vol. 9, p. 573, ff.). Likewise, the Tariff Information Survey on the articles in paragraphs 48, 49, and 50 of the Tariff Act of 1913, being a publication of the United States Tariff Commission, numbered A–14, published at Washington, 1921, refers only to flowers as the source of "floral essences." At page 39 of this survey, we find:

Enfleurage greases and floral essences are natural products obtained by extracting the odorous principles or perfumes of flowers by means of a solvent. * * *

\* \* \* \* \* \* \*

"Floral essences" are known in the trade as "concrete essences" or "floral concretes," and are obtained by treating flowers, such as the rose, jasmine, and tuberose, with petroleum ether or some other volatile solvent, which extracts the odors and after evaporation leaves a waxy residue containing all of the oderiferous constituents of the flowers. * * *

Of like tenor are the statements found in the Summary of Tariff Information, 1921, page 1303, and the Summary of Tariff Information, 1929, schedule 15, page 2327. In the Summary of Tariff Information, 1948, volume 16, part 2, page 193, referring to the enfleurage greases and floral essences and concretes covered by paragraph 1673 of the present act, the following is said:

* * * These materials are natural flower products used in the preparation of perfumery.

We conclude, therefore, that as commonly understood the term "floral essences" relates to products derived from flowers. We are not unmindful of the testimony offered by the plaintiff of three witnesses who had been engaged in the sale of oak moss absolute for varying periods of time. Each stated that he had sold oak moss absolute as a floral essence, and, as to at least one of these witnesses, it was established that he had so sold it since 1928, i. e., a time prior to the passage of the Tariff Act of 1930 in which the term "floral essences" appears.

Ordinarily, we should be inclined to give great weight to the testimony of persons engaged in a trade in the United States as to the meaning in that trade of a disputed tariff term. As there is no question of invoking the rule of commercial designation here, the testimony was offered in this case as an aid to the court in determining the common and commercial meaning of the term "floral essences." While, as has been said, each of the witnesses testified that he, personally, had sold oak moss absolute as a floral essence, the testimony of the witnesses, considered individually or as a whole, was not indicative of a general trade use or acceptation of the term "floral essences" as embracing oak moss absolute. We realize that each witness is limited in his testimony to his own personal experience, but the mere fact, standing alone, that three witnesses at some time or times had offered and sold oak moss absolute as a floral essence, without any evidence as to continuity, regularity, or experience with respect to the receipt, as well as the giving, of offers under that name, does not demonstrate that, commercially, oak moss absolute was known and dealt in the trade as a floral essence. The evidence is as referable to sporadic instances outside the usual practice of the trade as it is to any general trade practice.

We are, therefore, of the opinion on the record here made that oak moss absolute is not classifiable under the provision in paragraph 1673 for "floral essences."

The term "essential * * * oils" as used in paragraph 58 of the Tariff Act of 1930, under which plaintiff alternatively claims, is one of broad scope. Webster, *op. cit.*, defines "essential oil," so far as is here pertinent, as follows:

Any of a class of volatile odoriferous oils found in plants and imparting to the plants odor and often other characteristic properties;—called also *volatile oil*, in distinction from *fixed oil*. The essential oils are used in essences, perfumery, etc., and include many varieties of compounds: * * * .

Certainly, from what has been hereinbefore said, the merchandise at bar is within the above definition, and this seems to be the view of textual authorities on the subject. E. J. Parry in his treatise entitled "The Chemistry of Essential Oils and Artificial Perfumes," 4th edition, revised, 1921, volume 1, page 1, describes "oak moss oil" as an

essential oil. Guenther, in his work already cited, The Essential Oils, volume VI, page 179, describes the production of oak moss concrete and absolute under chapter XVIII, entitled "Essential Oils of the plant family Usneaceae."

Defendant's contention that the essential oils covered by paragraph 58 are limited to those not used as perfumery materials is not supported by authority. The Summary of Tariff Information, 1929, lists at least two of the named oils, viz; patchouli and sandalwood, as used in perfumery.

Upon the record before us, we hold that the merchandise at bar, described on the invoice as "hyperessence oak moss incolore," is properly classifiable under the provision in paragraph 58 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, for essential oils, not specially provided for. As that provision is a tariff enumeration, the defendant's claim for assessment under paragraph 60 by virtue of the similitude clause cannot prevail. The protest claim for duty under paragraph 58, *supra*, is, therefore, sustained as to such merchandise and judgment will issue accordingly. In all other respects and as to all other merchandise, the protest is overruled.