Ted L. RAUSCH and Pacific Inter-
national et al.

v.

UNITED STATES.

C.D. 3487; Protests Nos. 60/19539–
91049–60, etc.

United States Customs Court,
First Division.

June 24, 1968.

Lawrence & Tuttle, Los Angeles, Cal. (George R. Tuttle, Jr., Los Angeles, Cal., of counsel) and Coudert Brothers (Eugene L. Girden, New York City, of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Richard J. Kaplan, Arthur H. Steinberg, and Charles P. Deem, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge.

These two protests which were consolidated for trial concern "V.I.P." and "Scalextric" miniature auto raceway sets and separately invoiced spare parts and related equipment. The imports were assessed with duty at the rate of 35 percent ad valorem under the provision in paragraph 1513 of the Tariff Act of 1930, as modified, for toys not specially provided for.[1]

Protest 60/19539 involves the V.I.P. raceway sets, parts and equipment. In that case it is claimed that the articles are properly dutiable at 13¾ percent ad valorem under paragraph 353 of the tariff act, as modified, which paragraph covers (i) "Articles having as an essential feature an electrical element or device * * * wholly or in chief value of metal * * *"; and (ii) "Parts * * * wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * *."[2]

In protest 63/6614(B)—which involves the Scalextric sets, components and equipment—it is claimed that the articles are properly dutiable either at the rate of 13¾ percent ad valorem under paragraph 353, or alternatively at the rate of 22½ percent ad valorem

---

1. Paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739, provides:

 Toys, not specially provided for:

 \* \* \* \* \*

 Other (except \* \* \*)...... 35% ad val.

---

2. Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, provides:

 Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

 \* \* \* \* \* \* \* \* \* \* \*

 Other (except \* \* \*) ......................... 13¾% ad val.

 Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) .................... The same rate the articles of duty as of which they are parts

under paragraph 397 of the act, as modified, as articles in chief value of metal.[3]

Each V.I.P. and Scalextric model set consists of prefabricated sections of track, fence railings and bridge supports which are designed for assembly into a miniature figure 8 (or other shape) automobile race track. When these sections are assembled, the set is connected to an electrical power source.[4] Also included in the set are two "ready-to-operate" model automobiles having plastic bodies and so scaled in size as to have linear dimensions of $\frac{1}{30}$ or $\frac{1}{32}$ of the actual automobiles they are designed to simulate. Each car, in addition, has vertically extended "guide shoes" or "guide pins" which are inserted into one of two slots that run continuously along the length of the track in the form of a two-lane roadway. The car also contains a small electric motor which is connected to two vertically extended brushes. When the set is in operation, these brushes remain in contact with the metal portion of the track and conduct the electrical energy from the track to the motor. The electric impulse so transmitted causes the armature of the motor to rotate, and this motion or mechanical energy is relayed to the rear wheels of the car by means of a gear system, causing the wheels to turn and move the car over the track. The front guide shoe is connected to a segmented horizontal steering mechanism which, when the car is in operation, conforms its direction to the curves or straightaways of the track. The speed of the car is regulated by means of a separate push-button or plunger control device which is, in essence, a rheostat or current regulating mechanism. As the push button is depressed by the operator, an increased flow of current causes the motor's armature to rotate more rapidly, and the car, in turn, picks up speed. Conversely, as the plunger is slowly released, a gradual reduction of speed results, while complete release causes the car to come to an eventual standstill. The plunger control mechanism thus permits the operators to vary the speed of the cars they race.

At the outset, it is basic that in a classification case the plaintiff has the twofold burden of proving that the collector's classification was erroneous and establishing the correctness of its own affirmative claim. E. g., Joseph E. Seagram & Sons, Inc. v. United States, 30 CCPA 150, 157, C.A.D. 227 (1943); United States v. H. V. Albrecht et al., 27 CCPA 112, 117, C.A.D. 71 (1939). It is equally basic that the collector's classification of an imported article under the toy provision gives rise to a presumption that it is chiefly used for the amusement of children. E. g., United States v. L. Oppleman, Inc., 27 CCPA 264, 264–65, C.A.D. 97 (1940); F. W. Woolworth Co. v. United States,

---

3. Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, provides:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \* \* \* \* \* \* \* \* \* \*
>
> Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
>
> \* \* \* \* \* \* \* \* \* \*
>
> Other (except slide fasteners and parts thereof) ....... 22½% ad val.

---

4. To provide electrical power, a 12-volt battery may be used or, in its place, a stepdown transformer may be wired to the layout to convert the relatively high-voltage output of an ordinary electric wall socket to a lower utilizable electrical potential of 12 volts. Neither the battery nor the transformer is a part of the set.

2 Cust.Ct. 1, 2, C.D. 74 (1939). Thus, in the present case plaintiffs, in order to prevail, must not only overcome this presumption by proving that at or immediately prior to the date of importation of articles were not chiefly used for the amusement of children (e. g., New York Merchandise Co., Inc. v. United States, 27 CCPA 117, 121–22, C.A.D. 72 (1939)), they must, in addition, establish that the V.I.P. articles met the requirements of paragraph 353 of the act, and that the Scalextric articles met the requirements of either paragraph 353 or paragraph 397 of the Act. More particularly, to obtain classification of the V.I.P. and Scalextric equipment under paragraph 353, plaintiffs had the burden of establishing (i) that the sets were in chief value of metal; and (ii) that the separately invoiced components were either articles in chief value of metal having as an essential feature an electrical element or device or were parts, in chief value of metal, of such articles.[5] Further, in order for the Scalextric sets and components to be classified under paragraph 397 of the act, it was incumbent upon plaintiffs to prove that they were in chief value of metal.

■ We hold—for the reasons set out below—that plaintiffs have not met the burden of establishing the correctness of their affirmative claims either under paragraph 353 or paragraph 397.[6]

■ It is, of course, fundamental that "[t]he proper method of determining component material of chief value is by determining the value of the separate parts of the article at the time they

are ready to be combined to make the completed article." United States v. Bacharach, 18 CCPA 353, 355, T.D. 44612 (1931). See also e. g., United States v. Rice-Stix Dry Goods Co., 19 CCPA 232, 234, T.D. 45337 (1931); Ross Products, Inc. v. United States, 52 Cust.Ct. 51, 55, C.D. 2435 (1964); Commercial Adolfo S. Pagan, Inc. v. United States, 48 Cust.Ct. 210, 216, C.D. 2337 (1962). In this context, and considering first the V.I.P. roadway set as an entirety, the parties stipulated that a number of the items, imported as integral parts of the sets, as well as separately (as spares and additional parts), are in chief value of metal. But these items account for only a portion of the roadway set in issue. Moreover, visual examination of the sets shows that many of its components are in fact constructed of plastic. Hence the stipulation fails to establish that the set, as an entirety, is in chief value of metal, and plaintiffs have produced no evidence whatever to support such a claim, let alone evidence of the value of the separate parts of the article at the time they were ready to be combined to make the completed article. Plaintiffs have, therefore, not shown that the V.I.P. sets as an entirety are properly classifiable under paragraph 353 of the act.

With respect to the separately invoiced V.I.P. parts and equipment, save for the push-button control devices, the record fails to establish that they possess an essential electrical element. Consequently, even though such items are in chief value of metal, they do not come within the purview of paragraph 353 as "Articles having as an essential feature

---

5. During the course of trial, the parties stipulated that the V.I.P. set itself contains an electrical element as an essential feature. In this connection, it is settled that articles having an electrical element as an essential feature and parts thereof must be in chief value of metal in order to qualify for classification under paragraph 353. Mager & Gougelmann, Inc. v. United States, 67 Treas. Dec. 302, 305, T.D. 47540 (1935); Ameri-

can Brown Boveri Co., Inc. v. United States, 65 Treas.Dec. 1250, 1251, Abstract 26786 (1934).

6. In view of this holding, it is unnecessary to reach the question—which was the subject of extensive testimony at the trial of these cases—as to whether or not the imported articles were chiefly used for the amusement of children.

an electrical element or device \* \* \*." Nor are the items classifiable under paragraph 353 as parts of V.I.P. sets since the sets themselves (as we have seen) are not dutiable under that paragraph.

Because of this same consideration— that the V.I.P. sets, as an entirety, are not classifiable under paragraph 353— the push-button control devices are likewise not dutiable under paragraph 353 as parts of V.I.P. sets. But even if the sets themselves were dutiable under paragraph 353, the push-button control devices would still not be classifiable as parts under that paragraph—this for the reason that plaintiffs have made no showing whatever that such devices are in chief value of metal.[7] The stipulation of the parties concerning component material of chief value did not cover the control devices, and plaintiffs failed to present any cost data concerning them.[8] Nor are the control devices classifiable under paragraph 353 as articles having an essential electrical element since they have not been shown to be in chief value of metal, as required by that provision.

Additionally, plaintiffs assert in their brief that "taken separately, the \* \* \* V.I.P. cars are clearly classifiable under Paragraph 353, supra." The assertion lacks merit. In the first place, the pertinent commercial invoice discloses that none of the V.I.P. cars here involved were separately invoiced. To the contrary, all such cars were imported as integral parts of the roadway sets and, therefore, constitute entireties for tariff purposes rather than separate entities. See e. g., James Betesh Import Co. v. United States, 40 Cust.Ct. 186, 191, C.D. 1981 (1958); Pez Haas, Inc. v. United States, 46 Cust.Ct. 290, 293, Abstract

65026(1961). Secondly, even if the cars were considered to be separate entities, they would not be dutiable under paragraph 353 in view of plaintiffs' failure to prove that they were in chief value of metal.

Lastly, plaintiffs argue with respect to the V.I.P. equipment that "the metal tracks alone make the entirety classifiable under Paragraph 397, supra, as manufacturer [sic] of metal nspf." [Emphasis added.] However, protest 60/19539, covering the V.I.P. equipment, claims classification under paragraph 353 alone; it makes no claim under paragraph 397. Nor have plaintiffs at any time sought to amend the protest— as permitted by our rule 6(c)— to encompass such a claim.[9] Not having filed such an amendment, plaintiffs are bound by the claim as made in the protest. American Mail Line, Ltd. v. United States, 34 CCPA 1, 6–8, C.A.D. 335 (1946); United States v. Jacobson & Sons Co., 10 Ct.Cust. Appls. 191, 193, T.D. 38551 (1920); United States v. Troy Laundry Machinery Co., 5 Ct.Cust.Appls. 430, 431–32, T.D. 34947 (1914), and cases cited; Carson M. Simon & Co. v. United States, 57 Cust.Ct. 224, 228–29, C.D. 2768 (1966); Innis Speiden & Co. v. United States, 14 Cust.Ct. 121, 126, C.D. 924 (1945); R. W. Gresham v. United States, 8 Cust.Ct. 122, 127–28, C.D. 589 (1942), rehearing denied, 8 Cust.Ct. 477, Abstract 47008 (1942).

We come now to protest 63/6614(B) covering the Scalextric roadway sets and separately invoiced equipment in which it is claimed alternatively that the articles are properly classifiable under paragraph 353 or paragraph 397. As indicated previously, to be classifiable under

---

7. As we have previously discussed, an item to be classifiable as a part of an article having an essential electrical feature must itself be in chief value of metal. See note 5, supra.

8. Parenthetically, it may be added that the push-button control devices are plastic

covered—a factor which hardly assists plaintiffs in meeting their burden.

9. Rule 6(c) provides that "A party may amend his protest, petition, appeal, application for review, or other pleadings or process, at any time by leave of court, and such leave shall be freely given when justice so requires."

either of these statutory provisions, it was incumbent upon plaintiffs to prove that the merchandise was in chief value of metal. Plaintiffs insist—and defendant denies—that such proof is provided by the deposition pursuant to a commission of H. K. Badcock, managing director of Minimodels, Limited, the manufacturer-exporter of the merchandise in question. Examination of that deposition shows that Badcock testified—in response to direct interrogatories—that he personally was responsible for supervising the production and the costing of the articles involved; and he had personal knowledge of the production and cost of the equipment; that his company maintained records of materials used and costs involved in manufacturing the equipment; and that such records were kept in the usual, normal daily course of the company's business. The witness then replied in the affirmative to the sixteenth direct interrogatory which read as follows:

> Are you familiar with the materials used, the cost of such materials, and the processes employed in the production of the various component parts of the scale model slot racing equipment sets manufactured by Minimodels

Limited *from 1957 to date?* [Emphasis added.]

After testifying that he became familiar with the matters contained in the foregoing interrogatory in view of his position as managing director in which he supervised all departments, the eighteenth direct interrogatory reading as follows was propounded to him:

> For any convenient quantity of the items below mentioned, i. e. one, one dozen, or one hundred, please state the cost of all the component materials used in the production of said items. The costs should include all materials, labor and the appropriate share of overhead expense to bring them up to the point of final assembly of the final articles. Labor costs which are allocatable [sic] to the cost of assembly per se do not enter into the cost of the component materials:

A list of 110 items followed which included components of the sets and separately invoiced parts. In response to this interrogatory, Badcock, after referring to certain notes, supplied cost figures for these various items—which information was supplied in tabular form under the following headings:

| Direct Material | | | | Direct Labour | Factory Overheads | Total Factory Cost |
| --- | --- | --- | --- | --- | --- | --- |
| Metal per 1000 | Plastic per 1000 | Rubber per 1000 | Other per 1000 | per 1000 | per 1000 | per 1000 |

Defendant propounded cross-interrogatories to Badcock, the third and sixth, and Badcock's responses thereto being particularly pertinent:

3. Have any of the component material costs of any of the articles listed under direct interrogatory No. 18 varied during the period from 1957 to date?—A. Yes.

6. If your answer to cross interrogatory No. 3 is "yes", have all

of the component material costs of all the said listed articles varied during the said period?—A. Yes.

Against this background, it must be concluded that Badcock's testimony lacks probative value. For one thing, there was not showing that the cost figures he supplied related to the merchandise in question—which was shipped in October 1961. Badcock stated in response to direct interrogatory 16 that he was

familiar with the component parts, materials used, and costs thereof from *1957 to date*. But there was nothing in his deposition which related the costs stated to merchandise shipped in October 1961. Indeed, for all that appears in the deposition, the costs stated could have been those prevailing at the time the witness testified—September 7, 1965. When it is considered also that the costs stated varied by an unspecified amount over a period of time (cross-interrogatories 3, 6), the witness' failure to relate his cost figures to any point of time becomes all the more significant. What is more, there is affirmative indication in the deposition that the cost figures supplied by Badcock related to merchandise manufactured considerably later than 1961. Thus in response to direct interrogatory 20, Badcock stated: "The production of rubber track ceased during the first quarter of 1963 and from then onwards the new plastic track was introduced into all Minimodels equipment." Previously, in answering the eighteenth interrogatory, Badcock indicated that the "Plexytrack" was made of plastic rather than rubber. When these two answers are read together, there would seem to be an inference that Badcock's cost figures related to merchandise manufactured no earlier than the first quarter of 1963.

There is the further consideration that Badcock, in response to the eight-

eenth interrogatory, supplied data showing the existence of labor and overhead costs that were not allocated to any of the component material costs. Nor was any explanation given as to what these costs were attributable to. Failing such explanation, these unallocated sums might well have been related to component materials other than metal and would thus have been incurred at a stage in the manufacturing process requiring their inclusion in the valuation of those other materials.[10]

Finally, plaintiffs argue that although the separately invoiced Scalextric track is not made of metal, it is classifiable under paragraph 397 by similitude to the V.I.P. track.[11] However, as we have previously indicated, protest 60/19539 covering the V.I.P. equipment makes no claim for classification of that merchandise under paragraph 397, and no effort has been made to amend the protest to include such a claim; hence that claim is not properly before the court. In such circumstances, the claim for classification by similitude must likewise fail, it being axiomatic that in order to establish such classification, plaintiffs must show that the purported similar article is, in fact, classifiable under the claim provision. See e. g., Ross Products, Inc. v. United States, 43 Cust.Ct. 162, 165, C.D. 2120 (1959). See

---

10. Even aside from the foregoing considerations, Badcock's cost figures fail to establish that certain of the imported items are in chief value of metal; i.e., "Bentley," "Plexytrack," "Track Borders," "Owners Stand & Pit," "Grandstand," "Banner," and "Banking Unit." Badcock also stated that he had no data for "Series E Cars," and that his firm never manufactured "Lap Recorders," or exported "Power Packs" to the United States. These last two items were on the list that followed the eighteenth direct interrogatory, but do not appear on the commercial invoice.

11. Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, provides:

> Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

also Ross Products, Inc. v. United States, 45 Cust.Ct. 290, Abstract 64603 (1960).

 Furthermore, "[i]t is clear from an examination of the language of the similitude clause that every enumeration in the tariff act, both dutiable and free, must be found to be inapplicable to the merchandise under consideration before recourse may be had to the similitude clause, that is to say, the similitude clause applies only to merchandise which is not enumerated in the tariff act." Ungerer & Co., Inc. v. United States, 33 Cust.Ct. 152, 154, C.D. 1647 (1954). See also United States v. Stouffer Co., 3 Ct.Cust.Appls. 67, 69, T. D. 32351 (1912); American Smelting & Refining Co. v. United States, 16 Cust. Ct. 121, 124, C.D. 997 (1946). Under this principle plaintiffs could not prevail in any event on their claim for classification by similitude. For they have made no showing that the Scalextric track is a nonenumerated article. Thus, even assuming that the toy provision is inapplicable to the Scalextric track, plaintiffs have failed to show that paragraph 1539(b) of the Tariff Act of 1930, as modified—which provides for articles manufactured of any product that is in chief value of synthetic resin or resin-like substance—is also inapplicable.[12] See e. g., Universal Foreign Service et al. v. United States, 46 Cust.Ct. 258, 262, C.D. 2266 (1961); S. S. Kresge Co., et al. v. United States, 46 CCPA 100, 103, C.A.D. 707 (1959).

For the foregoing reasons, we hold that plaintiffs have not established the correctness of their affirmative claims. The protests are, therefore, overruled. Judgment will be entered accordingly.

WATSON, Judge, concurs.

12. Paragraph 1539(b) of the Tariff Act of 1930, as modified by T.D. 54108, provides:

Manufactures wholly or in chief value of any product described in the preced-

ing item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent ... 21¢ per lb. and 17% ad val.