**DAVIES, TURNER & CO.**

v.

**UNITED STATES.**

**C.D. 3621; Protest Nos. 63/15662–93672, etc.**

United States Customs Court,
First Division.

Nov. 20, 1968.

Allerton deC. Tompkins, New York City, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg and Harold L. Grossman, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge.

MALETZ, Judge:

These nine protests, which were consolidated for trial, involve merchandise imported at Philadelphia from Austria and England. The imports consist of more than one hundred types of plastic articles—some assembled, others unassembled (in kit form)—that are miniature replicas of various animate and inanimate objects. All the imports were classified by the collector as toys, not specially provided for, under paragraph 1513 of the Tariff Act of 1930, as modified, and assessed with duty at the rate of 35 percent ad valorem.[1] Plaintiff makes numerous claims for classification (1) by similitude under paragraph 1559(a) of the Tariff Act of 1930, as amended, (2) as nonenumerated articles under paragraph 1558 of the act, as modified, and (3) as articles manufactured of a product of which any synthetic resin or resin-like substance is the chief binding agent, under paragraph 1539(b) of the act, as modified. Each of these claims will be discussed separately in connection with the specific imported item or items to which it relates.

■ At the outset, it is basic that in a classification case the plaintiff not only must prove that the collector's classification was erroneous, he must also establish the correctness of his own affirmative claim. E. g., Rausch v. United States, 60 Cust.Ct. 654, 657, C.D. 3487, 286 F.Supp. 576, 578 (1968), and cases cited. For an action to recover on a claim for refund of custom duties—like an action to recover on a claim for refund of internal revenue taxes—"is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him." Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932). It is settled also that classification by the collector under the toy provision gives rise to a presumption that the imports are chiefly used for the amusement of children. E. g., United States v. L. Oppleman, Inc., 27 CCPA 264, C.A.D. 97 (1940); F. W. Woolworth Co. v. United States, 2 Cust.Ct. 1, C.D. 74 (1939). As to this latter aspect, the question of whether or not the imported articles

---

I. Paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739, provides:

Toys, not specially provided for:
 * * * * *

Other (except * * *) . . . . 35% ad val.

The term "toy" is defined in paragraph 1513 as:

* * * an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

were chiefly used for the amusement of children was the subject of extensive testimony at the trial of the cases,[2] with plaintiff contending that the articles were chiefly used for the amusement of individuals other than children, namely, certain teen-age and adult hobbyists. We find it unnecessary, however, to reach this question of chief use since we hold, for the reasons discussed below, that plaintiff has failed to establish the correctness of its affirmative claims. See e. g., Rausch v. United States, supra, 286 F.Supp. at 579 and note 6.

In view of the large number and variety of articles involved, plaintiff's claims can best be considered by dividing the nine protests (and the merchandise to which such protests relate) into three separate groups.

### Airfix Figures

 The first group of protests covers 12 varieties of miniature animate figures, including replicas of farm stock, civilians, and soldiers of various nationalities and eras—which are denominated "Airfix figures."[3] It is claimed that such figures are properly classifiable under paragraph 1539(b) of the Tariff Act of 1930, as modified, as articles manufactured of a product of which any synthetic resin or resin-like substance is the chief binding agent (and hence dutiable at 21 cents per pound plus 17 percent ad valorem).[4] Plainitff presented no evidence as to the composition of the product from which the Airfix figures were

manufactured but instead relied entirely on a stipulation that all such figures "are composed of a polyethylene type synthetic resin and a filler * * * and that the synthetic resin serves as chief binding agent."[5] (Tr. 1240–41.) Plaintiff states that the parties have thus stipulated that if the figures "are not toys, they are provided for specifically in paragraph 1539(b) * * *." (Brief, p. 44.) We cannot agree, however, that the stipulation has this dispositive effect. For under the pre-existing material doctrine, to obtain classification under paragraph 1539(b) it is not enough to establish (as the stipulation does) that the imported article itself contains a synthetic resin or resin-like substance that acts as chief binding agent. Rather, it is necessary to show that the imported article was *manufactured from a product* having a synthetic resin or resin-like substance as the chief binding agent. This is because the statute provides not for manufactures wholly or in chief value of synthetic resin, but rather for *manufactures of a product* having a synthetic resin or resin-like substance as chief binding agent. As was pointed out in Beauti-Vue Products Company v. United States, 58 Cust.Ct. 360, 367, C.D. 2987 (1967), "Congress [in enacting paragraph 1539 (b)] * * * restricted the coverage to laminated products and manufactures of products of which any synthetic resin or resin-like substance was the chief binding agent, rather than including all manufactures wholly or in chief value

2. The parties called more than one hundred witnesses, including importers, wholesale and retail distributors, adult hobbyists, children, hobby magazine publishers and psychologists, for the purpose of establishing the chief use of the imported merchandise.

3. These items are included on the invoices covered by protests 63/15662 and 63/15634.

4. Paragraph 1539(b) of the Tariff Act of 1930, as modified by T.D. 54108, establishes three categories of merchandise, namely, (1) laminated products (in sheets, plates, strips, blanks or other forms) of which any synthetic resin or

resin-like substance is the chief binding agent; (2) manufactures wholly or in chief value of any of the foregoing laminated products; and (3) "Manufactures wholly or in chief value * * * of any other product of which any synthetic resin or resin-like substance is the chief binding agent." Plaintiff claims classification of the Airfix figures under the third category.

5. The stipulation was based on a report of the United States Customs Laboratory in New York indicating that samples of these articles were found to contain a " * * * polyethylene type synthetic resin * * * [which] serves as chief binding agent."

of synthetic resin. In this * * * [connection], it is significant that the preexisting material doctrine has been held to apply to paragraph 1539(b) and [thus] *a product having synthetic resin as the chief binding agent is not classifiable as a manufacture of a product of which synthetic resin is the chief binding agent.*[6] [Emphasis supplied.] See also Burgess Battery Co. v. United States, 43 Cust.Ct. 189, 191, C.D. 2125 (1959); United States v. Accurate Millinery et al., 42 CCPA 229, 240, C.A.D. 599 (1955); United States v. J. E. Bernard & Co., Inc., 42 CCPA 69, 72–73, C.A.D. 573 (1954); Quong Hing v. United States, 25 Cust.Ct. 257, 258, Abstract 54617 (1950); Cohn & Lewis v. United States, 25 CCPA 220, 225, T.D. 49335 (1937). From what has been said, it is apparent that the fact that the imported Airfix figures are (concededly) composed of a synthetic resin which serves as chief binding agent does not *ipso facto* satisfy the statutory requirement that the imports be manufactured of a product of which synthetic resin or a resin-like substance is the chief binding agent. Plaintiff having failed to offer any evidence to show that the Airfix figures were thus manufactured from a product of which a synthetic resin or resin-like substance was the chief binding agent, its claim for classification under paragraph 1539(b) must be overruled.

*Construction Kits—Minitank Items*

The second group of protests involves numerous construction kits which fall into two categories: (1) 47 varieties of "Airfix construction kits"[7]—which kits are assembled by the ultimate purchaser (after importation) into scale models of airplanes, warships, railroad rolling stock, trackside equipment and vehicles; and (2) 23 varieties of "Rosebud Kitmaster Kits"[8] that are also manufactured to permit their assembly into complete models of railway cars and locomotives. All the items in this group are claimed to be assessable either (1) at 10 percent ad valorem, under paragraph 1558 of the Tariff Act of 1930, as modified, as nonenumerated articles,[9] or (2) under paragraph 1559(a) of the act, as amended, by similitude of use to various enumerated articles at the rate of duty imposed upon the particular enumerated article that most resembles the import insofar as use is concerned.[10]

6. To similar effect is the following statement in United States v. National Starch Products, Inc., 318 F.2d 737, 741, 50 CCPA 1, 6, C.A.D. 809 (1962): "[T]he *'product'* of which synthetic resin is the chief binding agent of paragraph 1539(b) must have an independent commercial existence before it constitutes a *'product'* in the sense of section 1539(b) from which 'manufactures wholly or in chief value' of such *'product'* can be made * * *. A contrary interpretation would render meaningless the words 'product' and 'manufactures' in paragraph 1539 (b)." [Emphasis in original.]

7. The Airfix construction kits are included on the invoices covered by protests 63/18700, 63/15634, 63/15667 and 63/18707.

8. The Rosebud construction kits are included on the invoices covered by protest 63/15628.

9. Paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52827, provides:

Articles manufactured, in whole or in part, not specially provided for (except * * *) . . . . 10% ad val.

10. Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, T.D. 53599, provides:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

The third group of protests concerns 38 so-called "Minitank" items.[11] These include 35 varieties of miniature military vehicles and equipment, and three sets of soldiers. The Minitank vehicles and equipment are comprised of snap-together components that are imported in already assembled condition. They are claimed by plaintiff to be classifiable either (1) by similitude to a variety of enumerated items under paragraph 1559 (a) of the Tariff Act of 1930, as amended,[12] or (2) as nonenumerated articles under paragraph 1558 of the act, as modified, at a rate of duty equal to 10 percent ad valorem,[13] or (3) as articles manufactured of a product of which any synthetic resin or resin-like substance is the chief binding agent, under paragraph 1539(b) of the act, as modified, at a rate of duty equal to 21 cents per pound plus 17 percent ad valorem.[14]

The Minitank soldiers are claimed by plaintiff to be classifiable under paragraph 1539(b).

■■ Turning to the claims for classification by similitude or as nonenumerated articles, the law is clear that to invoke *either* of these provisions it is necessary for the claimant to establish that the merchandise is not included within any of the enumerating provisions of the tariff act. E. g., Package Machinery Co. v. United States, 41 CCPA 63, 68, C.A.D. 530 (1953); United States v. Stouffer Co., 3 Ct.Cust.Appls. 67, 69, T.D. 32351 (1912); Rausch v. United States, supra, 286 F.Supp. at 582–583, and cases cited; Floral Arts Studio et al. v. United States, 39 Cust.Ct. 287, 291, C.D. 1943 (1957),

affirmed 46 CCPA 21, C.A.D. 690 (1958); American Smelting & Refining Co. v. United States, 16 Cust.Ct. 121, 124, C.D. 997 (1946).[15] Against this background, and considering that the imported items in question are composed of plastic, it was incumbent upon plaintiff to show—at the very least—that such items are not classifiable under paragraph 1539(b) as articles manufactured of a product of which any synthetic resin or resin-like substance is the chief binding agent. But on this essential element, plaintiff did not present any evidence whatever as to whether or not the Airfix construction kits, the Rosebud Kitmaster sets, and the Minitank vehicles and equipment are articles manufactured of a product having a synthetic resin or resin-like substance as its chief binding agent. Since plaintiff thus failed to show that the foregoing items are not included within the enumerating paragraph 1539 (b), its claim for classification of these items by similitude or as nonenumerated articles must necessarily fall.

■ This brings us to the Minitank soldiers which are claimed by plaintiff to be dutiable under paragraph 1539(b) as manufactures of a product of which any synthetic resin or resin-like substance is the chief binding agent. The parties have stipulated that all such figures "are composed of a polyethylene and polystyrene type synthetic resin, and contain no filler * * * and that the synthetic resins do not serve as chief binding agent."[16] (Tr. 1240–41; see also Tr. 1127–28.) As in the case of the Airfix figures, plaintiff presented no evi-

11. The Minitank articles are included on the invoices covered by protests 63/18702, 63/21269 and 63/21275.

12. See note 10, supra.

13. See note 9, supra.

14. See note 4, supra.

15. In Ungerer & Co., Inc. v. United States, 33 Cust.Ct. 152, 154, C.D. 1647 (1954), the court put the rule this way: "It is clear from an examination of the language of the similitude clause that every enumeration in the tariff act, both dutiable and free, must be found to be inapplicable to the merchandise under consideration before recourse may be had to the similitude clause, that is to say, the similitude clause applies only to merchandise which is not enumerated in the tariff act."

16. This stipulation was likewise based on a report of the United States Customs Laboratory in New York stating in part that the articles are composed of synthetic resins which "do *not* serve as chief binding agent * * *." [Emphasis supplied.] Cf. note 5, supra.

dence as to the composition of the product *from which* the Minitank soldiers were manufactured but instead relied entirely on the foregoing stipulation which, it says, embodies agreement by the parties that if the figures are not toys, they are provided for specifically in paragraph 1539(b). (Brief, p. 50.) However, for the reasons set out previously, we conclude that the claim must be overruled by reason of plaintiff's failure to offer any evidence to show that the Minitank soldiers were manufactured from a product having a synthetic resin or resin-like substance as the chief binding agent.

The protests are overruled. Judgment will be entered accordingly.