(C.D. 2534)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 29, 1965)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff's protest seeks to have cat food classified as dog food under the *eo nomine* specification for dog food.

To rule on this claim, we are to decide what is comprehended in the Trade Agreement Supplementary to the General Agreement on Tariffs and Trade (T.D. 55816), by the paragraph 1558 enumeration of "dog food unfit for human consumption." What does it mean? Does it include all articles which, in their condition as imported, might be used to feed dogs? Or does it embrace only those articles that are customarily sold and used as dog food in the trade and commerce of the United States?

The merchandise is described as canned cat food. It is labeled as "for Your Cat." It was entered at the port of Champlain, N.Y., on August 13, 1962. The collector classified it as a nonenumerated manufactured article, not specially provided for, under paragraph

1558, dutiable at 10 per centum ad valorem. Plaintiff's claim is that this cat food ought to be classified as dog food, under the trade agreement modification of paragraph 1558, with duty at 9 per centum ad valorem.

The importation here in issue included three varieties of cat food. One has a base of chopped beef livers; a second, a base of beef and beef kidney; and the third, of chopped chicken parts. All are packed in cans which are labeled as Goff brand chopped beef liver, or Goff brand beef and beef kidney, or Goff brand chopped chicken parts, as the case may be, and on each can there is the statement "for Your Cat."

Plaintiff introduced into evidence several exhibits, including cans illustrative of the three varieties of the imported product (exhibits 1, 2, and 3), certain cans of dog food (exhibits 5, 6, and 7), and a label from a can of Goff brand chopped chicken parts for dog food (exhibit 4). Exhibits 1, 2, and 3, the merchandise in issue, are labeled as a product of Canada, prepared for Roy Goff & Co., Inc., Bridgeport, Conn.

Defendant introduced into evidence a label that counsel stipulated was representative of another line of merchandise "produced and distributed by the importer." [Plaintiff is a custom house broker; on cross-examination, defendant brought out testimony that Roy Goff & Co. packed "the cat food that is involved here" (R. 14), from which it may be permissible to deduce that by "importer" defendant alludes to Roy Goff & Co.]

Plaintiff introduced the testimony of two witnesses: Mr. Albert Charles Graham, vice president of Roy Goff & Co., with duties pertaining to sales and administration; and Dr. Larry L. Larrow, of St. Albans, Vt., a veterinarian practicing that profession and operating, in a partnership, a clinic in part for small animals, primarily dogs and cats.

Mr. Graham's company sells both cat and dog food. He testified that cans labeled and sold as dog food are larger than the cans labeled and sold as cat food; that the ingredients in both types of cans are the same; that the only differences are in the sizes of the cans and in the labels. (R. 17, 18.) However, Mr. Graham later qualified this testimony somewhat by conceding that his company does not pack either the beef and kidney product or the chopped beef liver product for dogs, but only for cats. It does put up a chicken product for dogs, although the witness was far from clear whether the same nutritional value and quality of chicken meat are used in both. (R. 20, 24.) The difficulty of understanding what Roy Goff & Co. did, in that respect, is illustrated by the following excerpt from the record on Mr. Graham's cross-examination:

Q. I asked you a few moments ago if there were any differences in the nutritional requirements of cats and dogs and you replied, I believe, that is a difficult question to answer. I wonder if you might be kind enough just to tell us where the difficulties lie?—A. I thought you wanted a direct answer. Is it between that of a cat and a dog? Our beef liver cat food being fed to a cat is a full wholesome diet and so is the other beef liver dog food for a dog.

Q. Are there any differences in the nutritional values of the chicken parts that you put up for cats and that which you put up for dogs?—A. That, outside of the fact that a cat being a more finicky eater, this is where a variety of products fits in. [R. 24, 25.]

While the labels on the cans of exhibits 1, 2, and 3 (the merchandise in issue) state only that the product is cat food, and the labels on exhibits 5, 6, and 7 state that those products are dog food, or for dogs, there are in evidence two labels detached from any can. One is plaintiff's exhibit 4; the other is defendant's exhibit A. Both are labeled "Dog Food," but they carry also the statement "Cats love it too," and a representation that both products are recommended by veterinarians to fill the meat ration requirements (beef exhibit A) of all breeds of dogs and cats, or to fill the animal protein requirements (chopped chicken parts, exhibit 4) of all breeds of cats and dogs.

Dr. Larrow testified that, at plaintiff's request, he had fed cat food, such as that here in litigation, to dogs in his clinic. He found they relished it and that it was a good food for them. He had not previously fed cat food to dogs.

There seems to be no doubt that both cats and dogs can eat and, on occasion, have eaten this food. There is doubt that dogs customarily eat cat food, or even that they are frequently fed cat food. There is little doubt that cat food is labeled as such in order to appeal to cat owners; that it is a more expensive article than the packs of dog food usually are; and that several varieties of cat food are made available so as to tempt the "finicky" eating characteristics of cats, a characteristics not usual in dogs.

We concur in the position taken by both parties, in their briefs, that this is a novel issue. The cases involving dog food are not relevant to the issue here. Therefore, we do not encumber this opinion with a discussion of those cases.

Plaintiff makes much of an argument that the labeling of this merchandise "was largely dictated by federal regulation rather than by any intent on the part of the plaintiff to characterize the contents of the can." (Plaintiff's brief, p. 14.) In support of this position, plaintiff cites two sections of the Code of Federal Regulations, title 9, section 18.12 (a) to (c) and section 25.14 (c).

We find this argument unimpressive. In the first place, there is not a scintilla of evidence as to any intention on the part of plaintiff with respect to anything. If counsel intended to base this argument

on the intention of some one other than plaintiff, then we do not have a very good record as to such an intention on the part of Roy Goff & Co., who are not a party to this suit. Mr. Graham was asked on cross-examination about the labels. He said they (Goff) label their "straight meat foods" as dog food, and sell and market them as such; that, as to such products, they "are aiming for the dog food or dog owners" as the market. (Record, pp. 14, 15.) Mr. Graham was not so direct as to the market for cat foods, because his "work currently has been predominantly with chains, A & P, Grand Union, and that type." His only knowledge as to who buys cat food is hearsay, so he says, but he knew for whom dog food was marketed. (Record, pp. 15, 16.)

Moreover, the Federal regulations which plaintiff's brief cites both relate to, and specifically mention, dog food *and other animal food* products and preparations. In section 25.14(c) (9 CFR), examples cited include "Dog Food," "Cat Food," "Dog and Cat Food," and "Animal Food." We see nothing in these regulations that required any one to label dog food as cat food, or anything other than what it was. Erroneous labeling of the product as cat food was not, as plaintiff appears to think, the labeling required by the cited Federal regulations.

While it is well established that definitions and standards of the Department of Agriculture are not controlling in customs procedure, they may be relevant. *United States* v. *Mercantil Distribuidora et al.,* 45 CCPA 20, C.A.D. 667. We deem it relevant, although not controlling, that there was recognition, in the regulations of the Department of Agriculture, that there were products which might be labeled and sold as one or another of several enumerated kinds of animal foods. The tariff modification, under which plaintiff claims, recognized only one of these products, namely, dog food.

Dog food is a tariff term which, like smokers' articles, household utensils, tableware, and other classifications too numerous to detail, is a use classifiation. It means food that is used to feed dogs. It is not necessary that the word "use" or "used" appear in the statute classifying an article. *E. C. Lineiro* v. *United States,* 37 CCPA 10, C.A.D. 411.

The use that determines classification of an article is its chief or predominant use. Although an article may be used for other purposes, classification is governed by chief use. This is a long-established tariff rule. *Hygeia Antiseptic Toothpick Co.* v. *United States,* 1 Ct. Cust. Appls. 497, T.D. 31529; *Goldfarb Novelty Co.* v. *United States,* 7 Cust. Ct. 130, C.D. 553.

Exclusive use is not the criterion for use classification. *Vandiver* v. *United States,* 1 Ct. Cust. Appls. 194, T.D. 31219.

Where, as here, there is testimony both as to regular use and occasional use, our appeals court has carefully distinguished between the

tariff effects of such uses. In *United States* v. *The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, C.A.D. 719, the court said:

Merely because one *can* drink from the imported cups and saucers does not establish the chief use thereof. A fugitive use or a mere susceptibility or capability of use is not controlling as to such chief use. [P. 5; emphasis copied.]

We hold that the instant merchandise is not within the *eo nomine* tariff enumeration of dog food. The protest claim for classification as dog food is overruled.

Judgment will enter accordingly.