**WESTERN IMPORTING COMPANY**

v.

**UNITED STATES.**

**C.D. 3734; Protests 65/17654–78127, 67/14595–85488.**

United States Customs Court

First Division.

March 13, 1969.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Steven R. Sosnov, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge:

These consolidated cases involve the proper tariff classification of importations from Hong Kong which were described variously on the invoices as "Plastic toy miniature slot machine assorted colours" and "Plastic Miniature Slot Machines." They were classified by the collector of customs under item 737.90 of the Tariff Schedules of the United States (19 U.S.C. § 1202) as toys and assessed with duty at 35 percent ad valorem. Plaintiff's claim is that the importations are properly classifiable under item 734.20 of the tariff schedules as game machines, dutiable at the rate of 11½ percent ad valorem.[1] We hold that the collector's classification is correct.

Quoted below are the relevant provisions of the tariff schedules:

Subpart E headnotes [to Part 5, Schedule 7]:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—

\*    \*    \*    \*    \*    \*    \*    \*

(iii) games and other articles in items 734.15 and 734.20 \* \* \*.

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

\*    \*    \*    \*    \*    \*    \*    \*

Toys, and parts of toys, not specially provided for:

\*    \*    \*    \*    \*    \*    \*    \*

737.90   Other ...................................35% ad val.
Subpart D.   Games and Sporting Goods

\*    \*    \*    \*    \*    \*    \*    \*

734.20   Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof .............11.5% ad val.

In this statutory context, the single issue before us is whether the importations are game machines within the meaning of item 734.20. If they are, then by operation of Subpart E, headnote 1(iii), they are excluded from classification as toys under item 737.90.

■ We now consider the record which consists of a representative sample of the imported merchandise and the

1. Plaintiff claimed in its protests an alternative classification under item 774.-60 as other articles not specially provided for, of rubber or plastics, dutiable at 17 percent ad valorem. In its brief, however, plaintiff makes claim for classification only under item 734.20, covering game machines. In such circumstances, the alternative claim for classification under item 774.60 is deemed abandoned.

testimony of one witness—called by plaintiff—who was the owner of the plaintiff company. Examination of the sample shows that the importation is a small, flimsy plastic article which somewhat resembles in appearance a miniature slot machine. Its dimensions at the base are about 1″ by 1″, and its maximum height is about ¾″. The article has a handle at its right side which when depressed and released causes an inner cylinder to spin. The cylinder contains slot machine symbols, such as fruits, bars and balls, which are viewed through three rectangular notches on the article's face.

We next turn to the testimony of plaintiff's witness. He testified that the imported articles are powered by a spring and a rubber band, and that when the handle is depressed, the spring is pushed down, releasing the rubber band, thus causing the inner cylinder to spin. Some 97,920 imported articles are involved in the pending cases, all of which, he stated, were "bought * * * as plastic toys" and sold in Las Vegas, Nevada, to a liquor store, a club and some restaurants. The liquor store and club, he added, gave the imported article away free to any person who walked into the premises.

The imported article has six combinations of symbols, including three of the same symbols in a row which, the witness testified, would be a jackpot. He stated that it can be played by wagering on the symbols that will appear when the cylinder stops spinning or by wagering on whether or not one of the players will get a given combination of symbols on a spin. It is played, he testified, like a slot machine is played except that it does not take a coin. He stated that in playing, the person makes his own rules; that one person can play it by himself; and that playing did not involve real competition since no skill was required. Additionally he testified that the importation was used for the amusement of adults; and that "you can have lots of fun with it" ; "[y]ou can play; you can

gamble on that. You can do anything you want to."

The witness also testified that he had seen "lots of people" "[m]aybe 100 * * * [m]aybe more" in Las Vegas and Los Angeles (if they brought it from Las Vegas) playing with the imported article. On one occasion, he said 30 different persons on a tour to Las Vegas played with 30 different imported articles in their rooms. "We all have lots of fun with this thing," he said, "because it's just a pastime in a room * * *."

In light of the evidence thus presented, we think it clear that the imported articles are "toys" within the meaning of the statutory definition, i. e., "any article chiefly used for the amusement of children *or adults.*" [Emphasis added.] For even apart from the statutory presumption of correctness attendant upon the collector's classification, there is the testimony of plaintiff's witness that the imported article was used for the amusement of adults; that "you can have lots of fun with it" ; "[y]ou can play; you can gamble on that. You can do anything you want to" ; " * * * we bought them as plastic toys." Hence, the collector's classification of the imported articles as toys is *per se* correct.

However (as we have seen), if the articles are also game machines within the meaning of item 734.20—as claimed by plaintiff—then by operation of headnote 1(iii), they are classifiable under that item and are excluded from classification as toys under item 737.90. On this aspect, we must conclude—for two reasons—that plaintiff has not proved its claim that the imported articles are game machines. First, there is an absence of probative evidence that they are chiefly used for the playing of a game. Second, they do not fall within the tariff meaning of the term "machine."

As to the first point, although the word "use" does not appear in item 734.20, it is obvious that the test of use must be applied to a machine in order to determine whether it is to be classified as a "game" machine. This is to say

that the term "game" machines, as it appears in item 734.20, is a tariff term which—like agricultural implements, tableware, household utensils, dog food, by-product feeds, medicinal preparations, etc.—is a use provision. See e. g., United States v. C. S. Emery & Company, 53 CCPA 1, 4, C.A.D. 868 (1966); A. N. Deringer, Inc. v. United States, 54 Cust. Ct. 205, 208, C.D. 2534 (1965); Lineiro v. United States, 37 CCPA 10, 14, C.A.D. 411 (1949); United States v. Hillier's Son Co., 14 Ct.Cust.Appls. 216, 222, T.D. 41706 (1926). And in this connection it is settled that the use that determines classification is the article's *chief* use. See e. g., Hoffschlaeger Company, Ltd. v. United States, Cust.Ct., 284 F.Supp. 787, 790, C.D. 3440 (1968). See also e. g., A. N. Deringer, Inc. v. United States, *supra*, 54 Cust.Ct. at 208, and cases cited. Thus, Rule 10 of the General Headnotes and Rules of Interpretation of the tariff schedules provides:

10. *General Interpretative Rules.* For the purposes of these schedules—

\*. \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

\* \* \* \* \*

■ "It is also well settled that evidence limited to use in one state, or in one part of the country, is insufficient to fulfill the territorial requirement of proof of chief use, unless it be shown that the area of established use is the principal or only area of use \* \* \*." Hoffschlaeger Company, Ltd. v. United States, supra, 284 F.Supp. at 790.

■ Against this background, the testimony in the present case as to the "game" use of the imported merchandise[2] is manifestly insufficient to establish that articles of the same class or kind as the imported articles are chiefly used as game machines. For not only was the testimony by plaintiff's witness limited to usage in one part of the country (Las Vegas and Los Angeles), there was no evidence whatever that the area of established use for articles of this class or kind is the principal or only area of use. Moreover, even if it were to be assumed that the testimony of the witness established that the articles sold by plaintiff are chiefly used as "game" articles, "this would fall far short of establishing that the particular class or type of goods, as a whole, is chiefly used in the same manner. The actual use to which the merchandise sold by plaintiff is put is not determinative of its chief use; it is the use of the particular class or type of goods, as a whole, that is controlling. \* \* \* In this connection, there is no evidence in the record that plaintiff's sales of the imported merchandise comprise a substantial portion of, let alone the bulk of, all sales of similar merchandise in the United States." William Shaland Corp. v. United States, Cust.Ct., 280 F.Supp. 457, 459–460, C.D. 3308 (1968), and cases cited.

Nor, as the sample makes clear, are the imported articles of the same class or kind as the slot machines used in

2. Webster's Third New International Dictionary (1961) defines the term "game" as:
\* \* \* an amusement or pastime \* \* \* a physical or mental competition conducted according to rules in which the participants play in direct opposition to each other, each side striving to win and to keep the other side from doing so \* \* \*

The same dictionary distinguishes between—
(1) A Game of Chance:
A game (as a dice game) in which chance rather than skill determines the outcome and
(2) A Game of Skill:
A game (as chess) in which skill rather than chance determines the outcome.

gambling casinos. They differ greatly from real slot machines in size, construction, operation and use. They have no slot, can receive no coins and can make no payoffs. Moreover, they have only one spinning tube in contrast to real slot machines which have three separate spinning tubes operating independently. Indeed, considering the flimsy nature of the importations, their diminutive size, and the manner of their operation, they would appear to be simply novelty items for amusement, rather than articles chiefly used for games. Cf. Wilson's Customs Clearance, Inc. v. United States, 59 Cust.Ct. 36, 40, C.D. 3061 (1967), and cases cited. This is emphasized by the further fact—of obvious probative value —that the importations were always bought by the importer as "toys." See e. g., Davis Products, Inc. v. United States, 59 Cust.Ct. 226, 230, C.D. 3127 (1967).

We think it clear too that the imported articles are not machines within the meaning of "game machines" in item 734.20. The legislative history of that item is set forth in the United States Tariff Commission's Tariff Classification Study, Explanatory and Background Materials, Schedule 7 (1960), p. 281:

> Item 734.20 provides for game machines, including coin or disc operated game machines, and parts thereof, at the rate of duty of 13.75 percent ad valorem. This is the rate now applicable under paragraph 353 to such game machines which contain as an essential feature an electrical element or device. The great bulk of game machines are of this type. The item would involve an increase in the duty on other game machines which do not contain an electrical element or device, now dutiable as machines not specially provided for in paragraph 372 at the rate of 11.5 percent ad valorem.

Thus, the question is whether the present importations were classifiable as machines under paragraph 372 of the Tariff Act of 1930. "While many items have been held to be, or not to be, 'machines,' there is no 'judicial determination' of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative." United States v. IDL Mfg. & Sales Corp., 48 CCPA 17, 23, C.A.D. 756 (1960). See also Nord Light, Inc. v. United States, 49 CCPA 12, 14, C.A.D. 786 (1961). Applying this test, we scarcely think that the importation falls within the common meaning of a (game) machine. It is true that the lever, the rubber band and the spring may change the direction of a force. The important consideration, however, is that the importation is not commonly known as a machine. Rather it is known in trade terminology as a toy and in common parlance as a miniature or replica of a slot machine. And it is not comparable, either factually or legally, to the coin-operated slot vending machine involved in United States v. Merckens, 17 CCPA 318, T.D. 43742 (1929).[3]

The protests are overruled. Judgment will be entered accordingly.

---

3. In *Merckens*, a small decorated vending machine having a slot in which a penny could be dropped whereupon, by the pulling of a slide, a small bar of chocolate was delivered to the operator, was held not to be a toy but a machine covered by paragraph 372 of the Tariff Act of 1922.