(C.D. 4118)

STYSON ART PRODUCTS CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 4, 1970)

*Rode & Qualey* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Peter Jay Baskin,* trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The two items of merchandise involved herein are plastic food picks and plastic shower curtain hooks which were classified under the provisions of paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, T.D. 55615 and T.D. 55816, as articles not specially provided for, in chief value of artificial flowers of "other" materials.

Of the claims alleged in its protests and later by amendment, the record shows that the plaintiff ultimately limited its arguments to only two contentions: (1) that the "Flora-Pics," exhibit 1, are properly classifiable by similitude to articles of wood under paragraph 412 of the Tariff Act of 1930, as modified, and (2) that the shower curtain hooks are properly classifiable by similitude to household utensils of steel under paragraph 339 of the Tariff Act of 1930, as modified. The plaintiff's various other claims, not having been proven or pursued, are deemed abandoned, and accordingly are hereby dismissed.

The statutes involved are as follows:

Classified under:

Paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877:

> Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:
>> Composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile _____ * * *
>> Composed wholly or in chief value of other materials (except feathers) and not specially provided for_____ 35% ad val.
> Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts provided for in the preceding item 1518(a) which components are wholly or in chief value of—
>> Yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile _____ * * *
>> Other materials (not including feathers) ___ 35% ad val.

Paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816:

> Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof, when composed wholly or in chief value of any material other than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, rayon or other synthetic textile, feathers, or paper and not specially provided for_____ 31½% ad val.
> Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials mentioned in the duty provisions of paragraph 1518, Tariff Act of 1930, if the material is—
>> Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems or parts thereof when composed wholly or in chief value of any material other than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, rayon or other synthetic textile, feathers, or paper and not specially provided for_____ 31½% ad val.

Claimed under:

Paragraph 1559(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1954:

> (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 412, Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476:

> Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:
>
>     *     *     *     *     *     *     *
>
> Other * * *_____ 16⅔% ad val.

Paragraph 339, Tariff Act of 1930, as modified by T.D. 54108:

> Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:
>
>     *     *     *     *     *     *     *
>
> Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—
>
>     *     *     *     *     *     *     *
>
> Other base metal:
>
>     *     *     *     *     *     *     *
>
> Other _____ 17% ad val.

The testimony herein establishes that the importations are used as food picks and shower curtain hooks and are not used primarily for ornamental purposes.

The adjudicated cases which we have examined on the subject of artificial flowers are numerous enough to afford rather clear guidelines as to what Congress intended should be regarded as artificial flowers under paragraph 1518 of the Tariff Act of 1930. This court and our Court of Customs and Patent Appeals both have heretofore treated the subject at length. Of the pertinent cases most cited, three are most frequently referred to: *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336 (1920), regarded as an early leading case; *Coro, Inc.* v. *United States*, 39 CCPA 154, C.A.D. 478 (1952);

and *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958). All three cases are commented upon by the appellate court in *United States* v. *Henry A. Wess, Inc.*, 54 CCPA 47, C.A.D. 903 (1967), wherein the subject of artificial flowers is also quite fully analyzed.

The court commented in the *Marshall Field* case (referring also to the *Coro* case, and the *Cochran* case), that artificial flowers must be suitable for the purpose of ornamentation to which natural flowers may be temporarily devoted. The court stated at page 79:

> * * * an *artificial* flower, by definition, is one which is suited to the uses to which natural flowers may be put, and the chief use of real flowers is to ornament. * * * [Italics quoted.]
>
> \*       \*       \*       \*       \*       \*       \*
>
> Thus an artificial flower can of course be used to ornament but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flower-like characteristics.

It is of course the province of this court to determine from the testimony of record, and/or from the actual examination of the two exhibits in controversy, whether the latter are artificial flowers in "accordance with common understanding," suitable for such ornamentation as the natural flowers may be temporarily devoted also judging the size and primary function of the articles.

In *Coro, Inc.* v. *United States, supra*, the merchandise consisted of certain metal and glass costume jewelry pins, the brooch portion being made to resemble a conventional flower. In holding the items not classifiable under paragraph 1518 of the tariff act, our appellate court, pages 157–158, stated:

> In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial [that *natural* was intended is clear from the context] flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

Accordingly, exhibits 1 and 2 are themselves persuasive witnesses which, when taken in conjunction with the testimony concerning their use, are not artificial flowers in accordance with the common understanding, for their ornamental function is secondary. They are not, therefore, articles in chief value of artificial flowers, as classified. Based on the foregoing, we find the collector's classification of the

importations represented by exhibits 1 and 2 as artificial flowers, erroneous.

As a consequence of the foregoing finding, the legal presumption of correctness attaching to the collector's classification falls and it becomes next the plaintiff's burden to establish its claim or claims. *United States* v. *Magnus, Mabee & Reynard, Inc.*, 39 CCPA 1, C.A.D. 455 (1951).

The testimony of the sole witness establishes that the imported plastic pick is a food pick similar in use to food picks of wood or metal and most similar, by virtue of its material characteristics of flexibility and fragility, to food picks of wood, distinguished from ordinary toothpicks by a frilly trim. The testimony further establishes that the imported plastic shower curtain hooks are most similar in use to shower curtain hooks of metal.

Plaintiff has nevertheless failed to fully satisfy its burden of proof in this case. As a threshold matter, before a resort to classification by similitude, it is incumbent upon plaintiff to establish that the merchandise is not included within any of the enumerated provisions of the tariff act. *Package Machinery Co.* v. *United States*, 41 CCPA 63, C.A.D. 530 (1953) ; *Davies, Turner & Co.* v. *United States*, 61 Cust. Ct. 311, C.D. 3621, 292 F. Supp. 722 (1968). In the case of articles composed of plastic, it has been noted that a minimal requirement exists that plaintiff prove that the articles in question are not classifiable pursuant to paragraph 1539(b) of the Tariff Act of 1930, as modified, as articles manufactured of a product of which any synthetic resin or resin-like substance is the chief binding agent. *Davis, Turner & Co.* v. *United States, supra.* There has been no proof offered herein dealing with the possibility that the importations are manufactured from a product of which any synthetic resin or resin-like substance is the chief binding agent.

Assuming that plaintiff had successfully proved this preliminary matter, certain deficiencies remain in its proof of proper classification by similitude. As regards the plastic food picks, plaintiff claims classification by similitude to manufactures in chief value of wood. The wooden food picks represented by exhibit 6, which plaintiff has proved are most similar to the importation, have attached to them a plastic frilly trimming.

There is no evidence in the record that this wooden food pick is in chief value of wood and an examination of the sample does not make it evident that the wood is the component material of chief value. See e.g. *Plastic Service Co.* v. *United States*, 63 Cust. Ct. 528, C.D. 3947 (1969) ; *Davies, Turner & Co.* v. *United States*, 64 Cust. Ct. 547, C.D. 4032 (1970). Thus, the final resolution of the question of similitude regarding the imported pick would depend first, upon proof of the in-

applicability of paragraph 1539 (b) and second, upon proof of the component of chief value of the imported pick as between the wood portion and the frill portion. The latter course would involve proof of the costs to the manufacturer of the separate parts of the food pick at the time they are ready to be combined into the completed article. *United States* v. *Mrs. S. Bacharach*, 18 CCPA 353, T.D. 44612 (1931).

As regards the imported hooks, plaintiff claims classification by similitude to household utensils. The term "household utensils," as it appears in paragraph 339 of the tariff act, had been judicially defined as relating to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home and for the convenience and comfort of its members. *Pramette Juvenille Furniture Company* v. *United States*, 36 CCPA 61, C.A.D. 398 (1949). Proof of chief use entails chief use over a large area. Accordingly, it is incumbent upon the plaintiff to establish by positive testimony that the shower curtain hooks, exhibit 2, are chiefly used as household utensils throughout a large geographical cross section of the United States. Local or partial use is insufficient. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240 (1927).

Evidence limited to use in one state, or one part of the country, is insufficient to fulfill the territorial requirement of proof of chief use, unless it be shown that the area of established use is the principal or only area of use of the article in issue. *Hoffschlaeger Company, Ltd., et al.* v. *United States*, 60 Cust. Ct. 497, 501, C.D. 3440, 284 F. Supp. 787, 790 (1968). See also, *Western Importing Company* v. *United States*, 62 Cust. Ct. 231, C.D. 3734, 297 F. Supp. 181 (1969), and *The A. W. Fenton Co., Inc.* v. *United States*, 40 Cust. Ct. 327, C.D. 2002 (1958), wherein testimony by a thoroughly qualified witness as to uses in California, Michigan, and Ohio was held to be insufficient to meet the territorial requirements of chief use, since uses in other parts of the country could differ (e.g., in this case, in hotels, clubs, etc.). We are, of course, aware of certain supporting cases cited by the plaintiff, such as *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765 (1935). We must consider, however, certain other leading cases which represent the prevailing authority and which militate against the plaintiff's position.

In a recent case, *James G. Wiley, Big Boy Mfg. Co.* v. *United States*, 63 Cust. Ct. 540, C.D. 3950 (1970), this court stated:

> The test of what the record should show was stated by our appeals court in *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953), as follows:
>> While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a

case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. * * *

\* \* \* \* \* \* \*

While we accept the issue of chief use of the merchandise in question as controlling in this case and agree with the able discussion of that subject by the trial court, we feel constrained to interject this comment. Candelabra and candlesticks are of quite common use. They are, as such, used in many varied ways, well known by most everyone. It is tempting, therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future. We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future litigation. It is to be regretted that the record in the case before us is not in that category. We find it almost totally unacceptable for such purposes. [Pp. 164, 165.]

Judged by this standard, what does the record before us show? Barbecue grills are of quite common use, but we do not decide chief use on the basis of judicial notice. The positive testimony before us is that the barbecue at bar is a meat cooking device "that you use in the back yard or patio." However, as to actual use personally observed, the record is explicit only as to the fact that Mr. Busby saw barbecue grills being used in demonstrations in named stores throughout the United States. Store demonstration cooking is, of course, not household cooking. As to household use which he had personally observed, the record is as follows:

"A. * * * also different homes I visit, or organizations, they would be cooking with it.
Q. Have you actually seen people cooking on these stoves?—A. Yes.
Q. I am referring to the stoves that you use the electric motor with.—A. That is correct.
Q. And where are those stoves used?—A. In the back yard mostly."

Where these homes were, or in how many he had observed the motorized barbecue used to cook in home premises, the witness did not say. We do not substitute judicial notice for the evidence which the doctrine of chief use requires. As our appeals court observed in *Tobert, supra,* it is to be regretted that the record before us is almost totally unacceptable for the purpose of presenting proof in quantity and quality sufficient to assist the court in determining the classification of such motorized barbecue grills for tariff purposes in the future.

In the case at bar, the plaintiff encounters the same burden of establishing chief use of the articles as household utensils over an area sufficient to constitute the required proof. The following testimony of

the witness, in our opinion, is quite inadequate to establish plaintiff's point:

> Q. Have you seen articles like Exhibits 1 and 2 used?—A. Yes; I have.
> Q. Where have you seen them used?—A. In various homes.
> Q. Where?—A. Well, in New York, Chicago, Dallas, Miami.
> Q. Any other localities?—A. I haven't been in any other localities.

In view of the deficiencies in plaintiff's proof set forth at length above, we find that it has failed to prove the correctness of the classification it claims. Accordingly, we overrule the protests herein without affirming the classification of the collector.

Judgment will issue accordingly.