(C.D. 4195)

MONTGOMERY WARD & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 2, 1971)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Richard C. King* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

---

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These four protests consolidated for trial involve the tariff status of merchandise invoiced as "Mother Hen Target Game Sets" that were imported from Japan and entered at the port of New York in 1965 and 1966. Each set includes a metal target board with supporting legs, four round plastic "eggs," three rubber-tipped plastic darts, and a spring-activated gun to fire the darts. The target board is painted with a representation of a hen in a farmyard, with a plastic egg-shaped target in the middle of the hen.

The government classified the imported sets that were entered in 1966 (protests 67/3014 and 67/72733) under item 737.80 of the tariff schedules as toys, not specially provided for, having a spring mechanism, and assessed duty at the rate of 44 percent.[1]

Plaintiff concedes that all the imported sets are chiefly used for the amusement of children or adults and therefore constitute toys. However, it emphasizes that headnote 1(iii) of schedule 7, part 5, subpart E provides that an article which is both a toy and a game is classifiable under the provision for games rather than under the provisions for toys. In this situation, plaintiff claims that the imports are "game machines" within the meaning of item 734.20 and therefore dutiable at the rate of 11.5 percent (or 11 percent for the sets that were entered after January 1, 1966). In the alternative, it claims that the articles are classifiable as game equipment under item 735.20 at the rate of 20 percent.

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 5, Subpart E

Subpart E headnotes:

> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—
>
> \*       \*       \*       \*       \*       \*       \*
>
> (iii) games and other articles in items 734.15 and 734.20, toy balls (items 735.09–.12), and puzzles and games in item 735.20 (see part 5D of this schedule).

---

[1] The government classified the imported sets that were entered in 1965 (protests 66/61893 and 67/76969) under item 737.90 as toys, not specially provided for, other than those having a spring mechanism, and assessed duty at the rate of 35 percent. Since it is undisputed that the sets have spring mechanisms, this classification was obviously in error—and defendant now requests that the court overrule these two protests without affirming the classification.

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

\* \* \* \* \* \* \*

Toys, and parts of toys, not specially provided for:

| 737.80 | Toys having a spring mechanism_____ | 44% ad val. |
| 737.90 | Other _____ | 35% ad val. |

Claimed under:

Schedule 7, Part 5, Subpart D

\* \* \* \* \* \* \*

737.80   Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof _____   11.5% ad. val. (11% after 1/1/66)

Claimed alternatively under:

Schedule 7, Part 5, Subpart D

\* \* \* \* \* \* \*

735.20   Puzzles; game, sport, gymnastic, athletic or playground equipment; all the foregoing, and parts thereof, not specially provided for _____   20% ad val.

Against this background, the questions for decisions are (1) whether the imported set is a "game"; and (2) if the answer to (1) is in the affirmative, whether the set is, in addition, a "machine" and thus classifiable as a "game machine."

Turning first to the record,[2] it shows that the imported merchandise is played with in the following manner: A person aims the spring-activated gun, loaded with a dart, at the egg-shaped target on the board and attempts to hit it with the dart. One person at a time fires at the target.

Hitting the target causes a bell to ring and a round plastic "egg" to drop into the catch basket at the front of the target board. A key-wound, spring-operated mechanism operates the bell. The egg is caused to drop by a mechanical linkage which causes the impact of the dart to raise a lever under the bottom ball in the chute, projecting it over a retaining barrier.

There is no reference on the imported set or its box to rules for scoring or for determining the winner.

---

[2] One witness—who was called by plaintiff—testified at trial. This witness was employed by plaintiff as a buyer of games, play sets, dollhouses and projectors.

The imported set is listed in plaintiff's catalog on a page with other games (e.g., electric baseball, Michigan rummy, etc.) and is referred to therein as "A good skill game for all ages." Likewise, the cover of the box in which the set is sold represents it as a "Mechanical Mother Hen Target Game."

We consider now the legal aspects. At the outset, it is to be observed that prior to the enactment of the tariff schedules, some games were specially provided for, some were classifiable as toys, and others were classifiable according to their component material of chief value. See e.g., *United States* v. *Abercrombie & Fitch Co.*, 22 CCPA 139, T.D. 47109 (1934). However, under the tariff schedules, all games and game equipment are now provided for in schedule 7, part 5, subpart D— the congressional intent being to remove all games, including "toy games," from the toy provisions. See *Tariff Classification Study, Explanatory and Background Materials, Schedule 7* (1960), pp. 281, 287–88, 290. See also e.g., *Western Importing Company* v. *United States*, 62 Cust. Ct. 231, 233, C.D. 3734, 297 F. Supp. 181, 182 (1969).

This brings us to the question of whether or not the imported set is a "game." The word "game" has been defined as follows:

*Funk & Wagnalls New Standard Dictionary of the English Language* (1952):

game, n. 1. A contest for recreation or amusement, to be won by chance, skill, or endurance, or by any or all combined; also, a particular kind of such contest, or the method or art employed in it; as, a *game* of dominoes; baseball has been called the American *game*.

The expression *games of chance* is used to describe those contests the outcome of which is largely governed by chance, as in cards, dice, and gambling games generally, and in opposition to *games of skill* the result of which depends largely upon the dexterity of the contestant.

*Britannica World Language Dictionary*, Vol. 1 (1963):

game n. 1 Any contest undertaken for recreation or prizes, played according to rules, and depending on strength, skill, or luck to win. * * * 7 A set of equipment used in playing certain games, as backgammon or darts. * * *

*Webster's Third New International Dictionary, Unabridged* (1963):

game 1a(1): an amusement or pastime: DIVERSION, PLAY <children at their *games*> * * * (2): the equipment used to play a game <what *games* will you buy the children for Christmas> * * * 3a(1): a physical or mental competition conducted according to rules in which the participants play in direct opposition to each other, each side striving to win and to keep the other side from doing so * * * d: a contest, rivalry, or struggle of any kind * * *

\* \* \* \* \* \* \*

game of chance: a game (as a dice game) in which chance rather than skill determines the outcome

game of skill: a game (as chess) in which skill rather than chance determines the outcome

As indicated previously, the importation is played by aiming the gun at the target and attempting to hit the target with the darts, thus ringing the bell and releasing an "egg." Further, the one witness who testified at trial indicated that when he had seen the article in use, more than one person played, taking consecutive turns, and that there is an element of competition involved, although no set rules for scoring are included on or with the game, or known to the witness.

On the basis of the record and an examination of the sample—which is a potent witness in the present case—it must be concluded that the imported set is a game since it involves, when played, a competition or contest for recreation or amusement with the result depending largely upon the skill or dexterity of the contestant. Indeed, the sample is obviously a simple target game. And simple target games are now games for purposes of tariff classification as is illustrated by the *eo nomine* provision for darts as a game in item 734.15. As in the game of darts, the present importation utilizes rubber-tipped darts and involves only one goal—to hit the target. And as in darts, only one contestant plays at a time, and all contestants customarily use the same equipment.

Worthy of mention, also, are the instructions printed on the back of the import's target board that read as follows:

### Directions for Hen Shooting Game

1. Wind the Bell and Put Eggs in Back Slot.
2. Each Player Stands About 2 Yards From the Target.
3. Each Player Has 4 Shots.
4. If Player Hits Target Bell Rings and Hen Lays an Egg.

The instructions do not say so but the obvious goal, as in all target games, is to hit the target. While many target games have a score on the face of them, which must be tabulated for *each player*, and many complex game machines automatically tabulate the score, the present importation gives "eggs" to indicate a score. The instructions indicate four shots for *each player*, although there are only three darts. There are, however, four "eggs," and it follows logically that four "eggs" would be released for a perfect score of four. Rules for scoring are not necessary as they are obvious from the game itself. One does not, in a target game, attempt to miss the target.

Various other factors also support the classification of the importation as a game. It was marketed and represented by plaintiff as a game. Thus (as noted before), plaintiff's catalog depicts it as a game and

describes it as "A good skill game for all ages."[3] All other items displayed on the same page of the catalog are represented as, and from their illustration and brief description appear to be, games. The cover of the box in which the game is sold represents it as a "Mechanical Mother Hen Target Game." Such evidence of the manner in which a merchant markets and sells his goods has obvious probative value. *Montgomery Ward & Co.* v. *United States*, 62 Cust. Ct. 718, C.D. 3853 (1969).

In sum, the unrebutted testimony of the only witness, the manner in which the imported merchandise was merchandised, and the nature of the sample itself are sufficient to rebut the presumption of correctness of the government's classification.

Defendant argues, however, that the evidence is insufficient to establish that the imported merchandise is chiefly used by *two or more persons* in a contest or competition and hence, that the merchandise cannot be considered a game. Of course, a game is necessarily a contest, but one which may be between two or more persons, or between one person and the game itself. For example, a slot machine can only be played by one person at a time, and even though different persons might use the same machine successively, the contest in each case would be between man and machine, with little or no correlation between the "score" of one player and another. A pinball machine can only be played by one person at a time and is a contest between man and machine which involves an element of skill, while the slot machine is essentially a game of chance. Darts can be played or practiced by one person alone simply as a test of skill of the player, with no necessity for an opposing player. All the above are "games" or "game machines" within the provisions for "games and sporting goods" in schedule 7, part 5, subpart D of the tariff schedules, and do not necessarily involve more than one person in their playing. The point is that these activities are games since they result in a "score" measuring one's skill or luck or combination thereof against a given set of rules. It is in this light that examination of the sample, including the instructions, makes it apparent that the importation in question—which is played in a manner very analogous to darts— is by its nature a game. Indeed, there can be no conceivable use for it other than as a game.

Concluding as we do that the imported sets are "games," we now consider whether the imported sets are "game machines" within the meaning of item 734.20—as plaintiff argues in its primary claim. The

---

[3] Examination of the sample shows that skill is, in fact, involved in hitting the target. In this connection, it has been ascertained by the court that by lining up the rear sight of the pistol and the 12:00 o'clock position of the rubber-tipped dart, aiming below the target—to compensate for an upward thrust in the spring-activated pistol—and squeezing the trigger, the target could be hit frequently from the recommended distance of two yards.

issue of whether an imported article is a machine for tariff purposes has been the source of considerable litigation over the years. Withal, there is no judicial determination of what a machine is. Rather, common meaning is determinative and each case must be decided on its own facts. *Morris Friedman* v. *United States*, 57 CCPA 92, 95, C.A.D. 983 (1970). See also e.g., *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, 23, C.A.D. 756 (1960). It is true that the importation is a device which changes the direction of the force applied by a dart striking the target. However, this factor is not controlling. *Morris Friedman* v. *United States, supra*, 57 CCPA at 96. See also *Trans Atlantic Co.* v. *United States*, 54 CCPA 75, 77, C.A.D. 909 (1967). The important consideration is that the present importation is not commonly known as a machine, nor (as examination of the sample makes apparent) does it rise to the dignity of a machine. See *Western Importing Company* v. *United States, supra*, 62 Cust. Ct. at 236. Hence, it is not classifiable as a game machine under item 734.20.

Based on the foregoing, the necessary conclusion is that the importation in question is properly classifiable under item 735.20 as game equipment dutiable at the rate of 20 percent. Judgment will be entered to that effect.