(C.R.D. 72-25)

GIMBEL BROS., INC. *v.* UNITED STATES

(Dated December 11, 1972)

*Rode & Qualey* (*William E. Melahn* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Velta A. Melnbrencis* and *John V. Henry*, trial attorneys), for the defendant.

---

MALETZ, Judge: This case is before the court on plaintiff's motions (1) for summary judgment; and (2) for a protective order to relieve plaintiff from serving answers to defendant's interrogatories pending the disposition of the motion for summary judgment or, if the motion is denied, for a 30-day extension of time after notice of entry of the order of denial within which to file answers to the interrogatories or for a further protective order. Defendant opposes the motions and alternatively cross-moves for an order extending its time to respond to the motion for summary judgment until after completion of its discovery.

The suit involves the tariff classification of merchandise imported in 1964 and 1965 which, the parties agree, consists of and is described on the entries as:

> Racing car sets with over & under track chikane, lap counter, start & finish gates, 2 Cooper sports racing cars, 20 pcs. track, spare contacts; [s]tock car road set with two (2) switches, remote control and with triple oval layout track; and [m]ini-[s]port el; * * *

The merchandise was assessed at the rate of 35 percent ad valorem under item 737.90, Tariff Schedules of the United States, as modified, as "[t]oys * * * not specially provided for: [o]ther." It is claimed to be dutiable at the rate of 10 percent ad valorem under the provisions of item 734.20 of the tariff schedules, as modified, for "[g]ame machines * * * including games having mechanical controls for manipulating the action, and parts thereof."

The events leading up to the present motions are these: On April 4, 1972, plaintiff filed a complaint which was answered by defendant on June 6, 1972. In its answer, defendant denied plaintiff's allegations that the imported merchandise is a game machine and that each set is a game, and denied, for lack of knowledge or information sufficient to form a belief as to their truth, plaintiff's allegations with respect to the manner in which the article is played and operated, the purpose of the play, and the claim that "some degree of skill, of judgment and manual dexterity" is required by each player.

On June 6, 1972, the same day as it filed its answer, defendant, pursuant to rule 6.3, also served plaintiff with its first interrogatories and requested that they be answered within 60 days. Plaintiff responded instead on July 7, 1972, with the present motions for summary judgment and for a protective order.

The motion for summary judgment is supported by a memorandum; a statement of material facts as to which plaintiff contends there is no genuine issue; an affidavit executed by William M. McDuffee, a toy buyer for plaintiff; a sample of a "High-Rev Dune Buggy Race" set; and an instruction sheet for the "Dune Buggy Race" set.

McDuffee deposes in his affidavit that he purchased racing car sets in Hong Kong and Japan for the plaintiff-importer during 1964–65; that he is personally familiar with these sets and/or stock car road sets and has viewed them in operation at various stores of the importer; that plaintiff's records show that racing car sets and/or stock car road sets from Hong Kong and Japan were imported on three of the entries here; and that, although he did not purchase them, he is personally familiar with the sets imported from West Germany on the other entry involved here.

McDuffee also states that "all the * * * sets consist of two cars, start and finish lines, tracks of various shapes, and manipulative controls"; that "each set is a game machine in that each set is a game" and, in language identical to that used in the complaint, describes how the set is played and operated, and asserts that some degree of skill, judgment and manual dexterity is required. He also states that samples of the imported items are not available as all have been sold; and that the accompanying "High-Rev Dune Buggy Race" set, which is currently being sold in plaintiff's stores, is the same in all material respects as the imported item and is illustrative thereof.

Plaintiff asserts that this affidavit and the illustrative "Dune Buggy Race" set, together with the pleadings, establish a *prima facie* case in support of its claim, and that it is entitled to judgment as a matter of law unless defendant can offer positive testimony to "impeach or contradict" the affidavit. In its supporting memorandum to its second motion for a protective order, plaintiff states that it is "of the belief that the motion for summary judgment more than adequately covers all the facts necessary to decide the case * * *", and contends that the interrogatories far exceed the scope of discovery set forth in rule 6.1 (b) (1).

Defendant's cross-motion is supported by a memorandum; a statement of material facts as to which defendant contends there is a genuine triable issue; and two affidavits, one executed by Isidore Silberg, acting import specialist at the port of New York, who is charged with the responsibility of handling various games and game machines, and the other by the Department of Justice attorney assigned to the case.

Silberg states in his affidavit that, in his opinion, the term "racing car set" is not synonymous with the terms "games" or "game machines", but merely indicates the presence of one or more "racing cars"; that he is familiar with "racing car sets" consisting of miniature track layouts and miniature vehicles designed to travel along the track; that such sets vary considerably in quality, sophistication and features; that some sets do not involve any skill, dexterity, chance or endurance in their operation, whereas others do involve such features,

as well as competition; that, in his opinion, a determination as to whether the use of particular "racing car sets" involves the foregoing characteristics can only be made from an examination of a representative sample; and that he has no records or personal knowledge of the sets involved in the present case.

The affidavit of defendant's attorney states that she has been informed and is of the belief that none of the present import specialists in the port of New York who pass on toys, games, or game machines possesses any samples or personal knowledge of the merchandise here in question; that she has been informed by plaintiff's counsel that no samples of the actual importations or brochures or catalogs thereof are available; and that, without discovery directed to plaintiff, she is unable to obtain an affidavit(s) from any person(s) on behalf of defendant with personal knowledge of the imported merchandise which would justify defendant's opposition to the motion for summary judgment herein.

The gist of defendant's memorandum is that the government, including its import specialists at New York who handle this line of merchandise, is totally unfamiliar with the merchandise in question, does not know if an instruction sheet came with the set, and, accordingly, has no knowledge as to whether the "Dune Buggy Race" set produced by plaintiff for purposes of its dispositive motion is similar in all material respects to, or is even "illustrative" of, the importation. Thus, defendant states that it is unable to controvert plaintiff's allegations or to set forth more specifically matters which would show that a genuine issue of fact exists unless it obtains through discovery facts which appear to be exclusively in the possession of plaintiff.

Against this background, we agree with defendant that the intent of plaintiff's motions is to strip defendant of a right which the court clearly contemplated it should have. See rule 8.2(g), *infra*. On the one hand, plaintiff would take away defendant's right to cross-examine plaintiff's witnesses at trial by claiming that no triable issue exists; on the other hand, plaintiff would take away defendant's right and opportunity to show that a triable issue exists by precluding defendant from discovery. In short, plaintiff is attempting in a double-barreled action to obtain summary judgment *instanter* by precluding defendant from obtaining discovery regarding matters on which the resolution of the legal issues in large measure depend, such as (but not limited to) the construction, operation and mode of use of the imported article.[1] In other words, plaintiff would foreclose defendant from ascertaining the

---

[1] See *Mego Corp.* v. *United States,* 67 Cust. Ct. 19, C.D. 4246 (1971), and *Montgomery Ward & Co.* v. *United States,* 66 Cust. Ct. 233, C.D. 4195 (1971), as to what constitutes a "game" and a "game machine" within the meaning of the tariff schedules and as to the necessary elements of proof with respect thereto.

existence, if any, of evidence which would impeach any or all of the statements in McDuffee's supporting affidavit or would bring to light other relevant facts which might create a *bona fide* triable issue.[2]

In this connection, we note that, in the memorandum opposing the motion for summary judgment, defendant comments on the difficulty of resolving a case like this on a dispositive motion without even a representative sample and suggests that plaintiff's counsel may even be trying a product other than that imported. In his reply, counsel for plaintiff agrees that he "may indeed be trying a product other than that actually imported but this is a risk inherent in all legal papers drafted by attorneys based on information supplied by clients as well as live testimony in open court by any witness."

We totally reject the view thus expressed by plaintiff's counsel. For if the case were tried and decided on the basis of the wrong commodity, the ends of justice would be wholly subverted. Suffice it to say that the court will not be an abettor to such efforts. Indeed, the discovery rules of this court were broadly drawn so as to enable the parties to obtain information, as well as evidence, that would aid in preparation for trial and thus minimize the risks attendant upon trying a customs case in which the imported articles themselves must be proved.[3]

Furthermore, rule 8.2(g) was drawn in contemplation of the very situation confronting the court. It provides:

> **(g) When Affidavits Are Unavailable:** Should it appear from the affidavit of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may deny the motion for summary judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

From what has been said, it is apparent that at this juncture, the court cannot properly rule on the merits of the motion for summary judgment in light of defendant's inability, without obtaining discovery, to obtain the facts, if they exist, essential to justify its opposition thereto.

---

[2] We do not here determine whether, if the facts alleged in the moving papers were uncontroverted, plaintiff would have made out a *prime facie* case in support of its claim.

[3] Rule 6.1(b) provides:

> **(b) Scope of Discovery:** Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Therefore, the court hereby grants defendant's cross-motion for an order extending its time to respond to plaintiff's motion for summary judgment until 30 days after notifying the court that it has completed its discovery, which notice shall be given within 5 days after completion thereof. In addition, the court hereby grants plaintiff's motion to allow it 30 days after notice of the entry of the present order within which to answer the interrogatories [4] or to move for a further protective order.

---

[4] Plaintiff asserts, in a reply memorandum, that some of the interrogatories propounded by defendant have already been answered in McDuffee's affidavit accompanying plaintiff's motion, and that others will not lead to information reasonably calculated to lead to admissible evidence, or are an annoyance and unduly burdensome. But inasmuch as the interrogatories themselves are not the subject of any motion before this court, we do not consider plaintiff's objections thereto.